Caldwell, Circuit Judge,
(after stating the facts.) The plaintiffs in error received the letters of the defendants in error dated, respectively, June 6 and 18, 1884, and January 6, 1889, and it is not controverted that the business was conducted on the part of the defendants in error in the mode outlined in those letters. Exception is taken to the ruling of the lower court that the letters of June 6th and 18th constituted the contract between the parties. The letters, though characterized by that brevity of statement common in commercial correspondence, are not of doubtful meaning. They state succintly and clearly the proposed course of dealing, and make no reference to material extrinsic facts; nor is it necessary to their proper construction to have recourse to any extrinsic facts. Undoubtedly, the general rule is that the question whether given written instruments constitute a contract, as well as the interpretation of such written instruments when it is determined that they do constitute a contract, belongs to the court, and not to the jury; and this rule is as applicable to commercial correspondence as to a formal written *360 contract. Brown v. McGran, 14 Pet. 479, 494, 495; Turner v. Yates, 16 How. 16, 23; Drakeley v. Gregg, 8 Wall. 242; Goddard v. Foster, 17 Wall. 123, 142. Exceptional cases arise where the contract rests partly in correspondence and partly in oral communications, in which it is held that the question whether or not there is a contract is a question for the jury; but this is not one of those cases.
In the construction of a written contract the court may consider the relation of tlie parties to the contract and its subject-matter; in other words, the court is not denied the same light and information the parties enjoyed when the contract was entered into. Goddard v. Foster, supra. Looking at these letters in this light, it is clear they expressed the contract of the parties. But the bill of exceptions puts this question at rest. The bill of exceptions states in terms:
“The evidence also establishes the fact that no wheat was delivered to the L. M. Co. after its failure, April 9, 1889, and that the contract and arrangement between the plaintiffs and defendants were made by letter; and all of the letters tending to show what that contract was are hereto annexed and made a part of this bill of exceptions. ”
Moreover, the course of business for five years, and the letter of the defendants in error to the plaintiffs in error, dated January 6, 1889, and the reply thereto, show conclusively that the letters of the 6th and 18th of June expressed the arrangement of the parties, and that they agreed perfectly in their understanding of the contract. When the relation of the parties to this arrangement is considered, there is no room for doubt as to the object of the contract, or its proper construction. The defendants in error were wheat dealers, and wanted to sell wheat by the car load to the Lanesboro Milling Company, but were unwilling to ship the wheat in a mode that would enable that company to get possession of it before it had been paid for. Thereupon the plaintiffs in error agreed that the wheat might be consigned and billed to them, and that they would collect the price from the milling company, and then, and not before, give an order upon the railroad company for the delivery of the wheat to the milling company. It is useless and irrelevant to the case to speculate as to what would have been the duty of the plaintiffs in error if the railroad company had tendered the wheat to them, and made a peremptory demand for its cars, before the milling company had paid for and received the wheat. The contract having been proved, the principal and the vital question in the case, after that, was one of tact, and was whether the plaintiffs in error authorized or consented to or knowingly allowed or permitted the delivery of the wheat by the railroad company to the milling company before it was paid for. This issue was very clearly put to the jury in the charge in chief, and in several instructions given at the request of the plaintiffs in error. These instructions are set out in the statement of the case, and need not be here repeated. The jury were told over and over that the defendants were not liable unless they authorized and consented that the railroad company might deliver the wheat to the milling company before it was paid for, and that, if the railroad company delivered it without their consent or authority, they *361 were not liable. They were also told that the defendants were not liable unless they had received the wheat. Under the instructions, it was not possible for the jury to find a verdict for the plaintiffs in the action without finding that the plaintiffs in error received the wheat, and that the wheat was delivered by the railroad company to the milling company, with the knowledge and consent of the plaintiffs in error, before it was-paid for. The finding of the jury on this issue renders extended discussion of the other questions raised unnecessary.
The learned counsel for the plaintiffs in error concedes in his brief that it may be inferred from the letters that the plaintiffs in error “were required, (1) on arrival of the wheat at Lanesboro, to collect the bill from the mill company; (2) thereupon deliver the wheat (i. e., give an order for it) to the mill company; and (3) thereupon credit the plaintiffs’ account with, or remit to them, the amount.” We think this is a fair statement of the obligations of the plaintiffs in error under the contract, and it is, in substance, what the court below told the jury it meant. It was implied, of course, that in the discharge of these obligations they would act in good faith, and exercise ordinary care and diligence. The contract, as construed by the plaintiffs in error, bound them not to give orders for the delivery of the wheat, or consent, expressly or impliedly, to its delivery by the railroad company to the milling company, until it was paid for. If they gave such orders, or were aware of and assented to such delivery before the wheat was paid for, their- liability for the price of the wheat thus delivered to the milling company cannot be disputed. This question of fact was fairly submitted to the jury under instructions certainly as favorable to plaintiff's in error as they had any right to ask. There was evidence from which the jury could rightfully find the fact that they did authorize or consent to the delivery of the wheat to the 'milling company, and their verdict must therefore be accepted as settling that question.
The complaint alleges that the wheat was delivered to the plaintiffs in error, and because of this allegation, probably, the court below instructed the jury that the plaintiffs could not recover unless the wheat had been delivered to the defendants by the railroad company. We do not think the plaintiffs were bound to prove this fact, notwithstanding it was alleged in the complaint. It was a case of redundancy of allegation. The material question was not whether the railroad company had delivered the wheat to the plaintiffs in error, but whether the plaintiffs in error had such dominion over the wheat that they could control and direct its possession. Confessedly, as consignees, they had that right. While the wheat was in the cars on the spur track at Lanesboro, if it was not technically in their possession, it was there subject to their order; as much so as if there had been a formal surrender of the cars to them by the railroad company. Having the undoubted and exclusive right to control the delivery of the wheat, the jury, by their verdict, have found that they exercised that right, and that they authorized the railroad company to transfer the' possession of the wheat to the *362 milling company before collecting the price. These findings are conclusive against the plaintiffs in error upon their own version of the contract.
These views render it unnecessary to further discuss the exceptions to the giving and refusing of instructions. The exceptions relating to the admission of the letter dated May 12, 1884, written by the defendants in error to the Bank of Lanesboro before the defendants purchased the bank, are unavailing, because the letter was withdrawn from the consideration of the jury, and was not considered by the court. There is an exception to the admission of parol proof of the contents of. the written paper or instrument given by Mr. Wall to the railroad company, relating to wheat delivered by the railroad company to the milling company without the written order of the plaintiffs in error; but the proper foundation for the admission of parol proof of the contents of the paper was laid, by showing that the paper was lost, and could not be found after diligent search in the office and places where it ought to be, and where there was any reason to suppose it could be found.
A separate examination of the numerous other exceptions to the ruling of the court in admitting and rejecting evidence is not necessary, as none of them are of any general importance. They have all been examined very carefully, and we are satisfied that none of them have any merit. Binding no error in the record, the judgment below is affirmed.