[No. 59.   Third Appellate District.—October 16, 1905.]

## ENNIS BROWN COMPANY (a Corporation), Respondent, v. W. S. HURST & CO., Copartners, Appellants.

Action for Breach of Contract—Sale of Potatoes—Letters—Proposal and Acceptance.—In an action for damages for breach of a contract to sell and deliver two carloads of potatoes the question whether the correspondence between the parties showed the existence of the alleged contract is one of law for the court; and to show a binding contract it must appear that defendant's proposal was unqualifiedly accepted by the plaintiff, without any condition amounting to a new proposal.

Id.—Request for Shipment—Uncertainty as to Conditions—Circumstances and Conduct of Parties—Construction of Contract.—Where there is uncertainty or ambiguity as to whether plaintiff intended to make a request as to the shipment of the potatoes a new condition of his acceptance of defendant's proposal to deliver them, the court may look to the surrounding circumstances and subsequent conduct of the parties to discover whether such uncertainty was not removed or waived. In such case the contract must be interpreted in the sense in which defendant believed that plaintiff understood it.

Id.—Relation of Acceptance to Proposal—Identity of Language not Essential.—It is not essential to the acceptance of defendant's proposal that plaintiff should use the same identical language used in the proposal. Any form of expression showing clearly an intention to accept on the terms proposed or to consent to the same subject-matter in the same sense is sufficient if coupled with no new conditions.

Id.—Part Performance—Statement of Further Inability to Perform Contract not Questioned.—Where the defendant partly performed the contract, and without questioning its existence put his further failure to perform upon the sole ground that he could not procure the quantity of potatoes agreed·to be sold, the plaintiff had the right to assume that defendant understood plaintiff's acceptance as plaintiff understood, as constituting a contract between them.

Id.—Notice of Cancellation for Inability—Readiness to Pay not Required.—Defendant having notified the plaintiff of his inability to perform and of having canceled the contract, plaintiff was not called upon to show its ability or readiness to pay.

Id.—Amendment of Complaint after Submission.—The court could permit an amendment of the complaint after the evidence had been closed and the cause submitted and taken under advisement and before decision, to cover a variance in the proof by which the defendant could not be misled, and in respect of which defendant did not request permission for further evidence nor make any showing that the amendment would result to his injury.

Id.—Evidence—Market Value of Potatoes.—Where the contract called for delivery of the potatoes from Aurora, Oregon, to plaintiff, residing in Sacramento, on April 20th, evidence to prove the market price of potatoes in Oregon, and the market price at Sacramento less freight from Oregon on carload lots, five days prior to that date, was not prejudicial where it appeared that the market price at no time after the 20th was less than such evidence showed, and the court adopted the lowest price at any point shown by the evidence.

Id.—Usage—Time and Place of Payment.—Evidence was admissible to show a usage that in similar contracts payment was to be made at Sacramento after inspection of the potatoes, the seller sending a draft with a bill of lading and invoice; and it could not be prejudicial to show that such was the usage of plaintiff upon similar contracts where the potatoes were not purchased for or delivered to plaintiff.

Id.—Usage as to Confirmation of Sale after Acceptance—Conflicting Evidence.—Where the evidence was conflicting as to whether there was a usage between the parties to confirm the sale after acceptance of the proposal, such usage cannot be regarded as established in opposition to the findings of the court.

Id.—Waiver of Usage.—If such usage existed, it was competent for the parties to waive or disregard it, and it is sufficient that the evidence shows that both parties treated the offer as accepted without further confirmation on the part of either.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial.   P. J. Shields, Judge.

The facts are stated in the opinion of the court.

Hinkson & Elliott, for Appellants.

White & Miller, for Respondent.

CHIPMAN, P. J.—This is an action for damages growing out of a contract alleged to have been entered into between

I Cal. App.—48

the plaintiff, residing in Sacramento, California, and defendant, residing in Aurora, Oregon, for the delivery by defendant to plaintiff of certain two carloads of potatoes. The complaint alleges that on or about the fifteenth day of April, 1901, defendant entered into a contract in writing with plaintiff whereby defendant sold to plaintiff and plaintiff purchased from defendant two carloads of potatoes at the agreed price of fifty-five cents per hundred pounds, ''which said two carloads of potatoes were to be within a week thereafter delivered by defendant to plaintiff.'' The complaint further alleges demand for the delivery and neglect and failure upon the part of defendant to comply therewith, resulting to plaintiff's damage in the sum claimed in the complaint. There was a demurrer interposed by defendant on the ground of insufficiency of facts, which was overruled, and defendant answered, denying specifically the material allegations of the complaint. As a separate answer defendant alleged that he was at all times mentioned in the complaint absent from and was a nonresident of the state of California, and is and was a resident of the state of Oregon, and that no personal service of summons was ever made upon him other than by publication thereof. It is further alleged in the answer that all the transactions and negotiations and writings that took place between plaintiff and defendant consist of letters and telegrams exchanged between them and did not and do not constitute a contract between defendant and plaintiff. The court found that on the thirteenth day of April, 1901, the defendant ''doing business under the firm name of W. S. Hurst & Company entered into a contract in writing with plaintiff whereby the said defendant sold to plaintiff and plaintiff purchased of said defendant two carloads of potatoes at the agreed price of fifty-five cents per hundred pounds which said two carloads of potatoes were to be delivered by defendant to plaintiff within a week thereafter''; that plaintiff demanded delivery thereof, but defendant refused and neglected to deliver the same, to plaintiff's damage in the sum of four hundred and twenty dollars; ''that said defendant based his refusal to deliver said potatoes solely upon the ground that no potatoes were to be had; that speculators and buyers had bought up all potatoes which could be found and that lots which defendant had bought had fallen short and defendant was unable for those reasons to deliver the potatoes to plaintiff.''

As conclusions of law the court found that plaintiff is entitled to judgment for the sum above named and judgment was thereupon duly entered. Defendant moved for a new trial, which was denied, and he appeals from the order upon bill of exceptions. The contract in question rests upon the letters and telegrams exchanged between the parties, and an understanding of the questions involved requires that this correspondence should be fully set forth. On Saturday, April 13, 1901, plaintiff sent the following telegram to defendant: "Wire lowest two cars choice Burbanks free from disease shipment next week." This telegram was followed by letter of the same date from plaintiff to defendant, as follows:

"Your letter of 10th inst. at hand and contents carefully noted. We note that you are shipping potatoes north. Suppose they are for the Alaskan trade. We telegraphed you to-day 'wire us lowest two cars choice Burbanks, free from disease. Shipment next week,' and now confirm the same, and we hope to receive your reply in a short time. If your price is reasonable we will order two more cars for shipment next week." Plaintiff received from defendant at 8:20 P. M. the same day, dated at Aurora, Oregon, the following reply: "Offer two cars choice Burbanks, fifty-five cents net, f. o. b. Oregon, from Aurora, C. F. X. nineteen six eight one." The concluding words of the telegram "from Aurora," etc., refer to car of the number stated, which was one of a three-car lot of potatoes previously ordered. On the same day (April 13th) defendant wrote to plaintiff, following this telegram of that date reading: "Inclosed find invoice and shipping receipt for first car of three sold you at 47½ cents net f. o. b. cars here in Oregon. We have your wire requesting lowest price on two cars more and wired you to-night offering two cars at fifty-five cents net f. o. b. Oregon. We are buying up potatoes at several points and do not know where we will ship any certain car from so make our prices good for any point along the line. We have your favor giving shipping instructions and will try to have cars follow each other five days apart. We ship with vents open as required." The shipping instructions referred to in the last clause of the above letter manifestly must refer to previous instructions relating to other cars given in the letter dated April 11th, found in the record. The next day, April 14th, was Sunday, and on Monday, April

15th, the following telegram was sent by plaintiff to defendant: "Accept offer two cars choice Burbanks fifty-five cents see letter shipping instructions." And on the following day, April 16th, plaintiff wrote defendant as follows: "Received your telegram yesterday offering two cars choice Burbanks fifty-five cents net f. o. b. Oregon, from Aurora C. F. X. nineteen six eight one. We immediately wired you 'accept offer two cars choice Burbanks fifty-five cents see letter shipping instructions,' and now confirm the same. Please ship one of these cars the latter part of this week and the other car the first of next week and please see that we get strictly choice stock." On April 17, 1901, plaintiff wrote to defendant acknowledging receipt on that day of the car previously referred to as number 19,681, and called attention to a few sacks that were of poor quality, and stating "wish you would see that the balance of our potatoes are of good size and well graded and choice potatoes. Do not ship us anything that is not properly graded." The letter also called attention to short weights of potatoes in the car and stated that defendant must make allowances for shrinkage, closing as follows: "We trust the balance of your potatoes will be all right and that the weights will hold out." On April 18, 1901, plaintiff wrote defendant stating that a draft for the car numbered 19,681 had been presented and paid that day, and said: "We expect you to make the shrinkage good on the cars you ship later." On April 19, 1901, defendant mailed a letter to plaintiff inclosing invoice of the second car of potatoes going forward that day and acknowledging receipt of plaintiff's letter of April 17th, and stating that defendant is selling the potatoes f. o. b. cars in Oregon, and that he does not think he should stand the shrinkage. Among other things, he said: "We think you will find this shipment runs better than the first car. All of our potatoes now come in small lots and it is impossible except in rare instances to have car lots run even that is all of one lot. We are obliged to take several different lots to make up a car. Potatoes are getting scarce and we find we were a little too fast in selling you three cars at 47½ cents, but will make shipments just the same." The next day, April 20th, plaintiff sent the following telegram: "Wire lowest two cars choice Burbanks free from disease. Answer quick." To which de-

fendant replied on the same day by telegraph: "No spuds to offer to-day getting scarce." On the same day plaintiff wrote to defendant stating that it had telegraphed for prices on potatoes, acknowledging the receipt of his answer of the same day, and concluded the letter as follows: "Should you have a car or two to offer by Monday or Tuesday please wire us your lowest price. We hope by that time you will be able to scrape up one or two cars." Defendant on the same day, April 20th, wrote to plaintiff: "We are practically out of the market for potatoes and do not care to sell any more until we get cleaned up on what we have sold. Should we have any later on we will write or wire you." On April 24th plaintiff wrote defendant as follows: "As we haven't heard from you suppose you have no more potatoes to offer. Should you have a car or two to offer we would be pleased to have you wire us your lowest price on receipt of this letter." On April 30th plaintiff telegraphed defendant: "Wire car number date shipment last car also quote lowest prices three cars choice Burbanks. Answer quick." May 1, 1901, defendant telegraphed: "Shipped 24th S. P. 38570 none to offer now." On the same day, May 1st, plaintiff telegraphed defendant: "Our records show two more cars to be delivered fifty-five cents hundred f. o. b. when will you ship answer quick." On the same day defendant telegraphed to plaintiff: "No potatoes to be had. Have canceled order. See letter." On Sunday defendant wrote plaintiff: "Your wires at hand. We are sorry to be compelled to cancel your last order for two cars of potatoes at 55 cents per 100. We have had a hard time to find the potatoes to fill the first order of 3 cars. We find that speculators and buyers from Portland have gone out and bought up every lot of potatoes that could be found, and now it is impossible to pick up any potatoes at all. This with the great falling short of lots that we had bought has made it utterly impossible for us to continue shipping. So we are practically out of the market for this season." There were some later letters, but they were excluded by the court.

In the case of *Wolf* v. *King, ante,* p. 749, [82 Pac. 1055], we had occasion to state briefly the rules or principles governing contracts entered into by written correspondence, as follows: "It is for the court to determine whether letters which have passed between the parties constitute an agreement be-

tween them; to constitute a binding contract made in this form, there must be a proposal squarely assented to; if the acceptance be not unqualified, or go to the actual thing proposed, there is no binding contract; a proposal to accept, or an acceptance based upon terms varying from those offered, is a rejection of the offer; an offer imposes no obligation, unless accepted upon the terms proposed and the acceptance must be absolute and unqualified, for if qualified, it is a new proposal.'' See cases there cited.

Appellant claims that there were two material particulars in which plaintiff's acceptance differed from its original proposal: First, the time of shipment was changed from two cars during the week following April 13th, to one car that week and one car the first of the week thereafter; and, second, the quality of the potatoes was changed from ''choice'' to ''strictly choice.'' It will be noticed that in plaintiff's letter of April 16th the offer of defendant is confirmed in the exact terms stated by him. Following this absolute confirmation plaintiff requests that defendant ship the first car that week and the second the beginning of the following week, which might have been complied with by no greater delay from the offer and acceptance than a day, for he could have shipped the first car on Saturday of the first week and the second on the following Monday. The trial court manifestly did not regard this request as introducing any new or material condition into the transaction or changing its effect in any material respect. Defendant had offered two cars for delivery f. o. b. that week, extending to Saturday, and the request could have been complied with, as just suggested, by sending one car that day and one car on the following Monday. Defendant's telegram of April 15th was an absolute acceptance and completed all the essential elements of a contract, and the letter following the telegram on the 16th was of similar import unless the request as to the shipment of the potatoes, and the request that ''strictly'' choice potatoes be shipped constituted a new proposal or a rejection of the first one. An instructive case as to when a request, following an absolute acceptance, will be regarded as a modification of a proposal, is found in *Turner* v. *McCormick*, 56 W. Va. 161, [107 Am. St. Rep. 801, 49 S. E. 28].

If there was uncertainty or ambiguity as to whether plaintiff meant to make the request as to shipment a new condi-

tion we may look to the surrounding circumstances and to the
subsequent conduct of the parties to discover whether such
uncertainty was not removed or waived. (Civ. Code, sec.
1647; Code Civ. Proc., secs. 1860, 1870, subd. 12.) In such
case the contract "must be interpreted in the sense in which
the promisor believed, at the time of making it, that the
promisee understood it." (Civ. Code, sec. 1649.) There can
be no doubt but that if defendant had shipped the potatoes
plaintiff would have been bound to receive them. At this
time plaintiff and defendant were dealing with each other in
the same commodity. There was a contract for three carloads
of potatoes then being filled, and but one of these was ready
for delivery; the second one did not go forward until April
19th, and the third not until May 1st. During this time de-
fendant appears to have been endeavoring to find potatoes
and plaintiff was endeavoring to place with him additional
orders. On April 20th defendant wrote plaintiff in reply to
an inquiry for more potatoes: "We are practically out of the
market for potatoes and do not care to sell any more until we
get cleaned up on what we have sold"; and on May 1st, in
reply to plaintiff's inquiry as to the two cars in question,
defendant telegraphed: "No potatoes to be had. Have can-
celed order. See letter." On the same day defendant wrote
plaintiff: "Your wires at hand. We are very sorry to be
compelled to cancel your last order for two cars of potatoes
at 55 cents per 100. We had a hard time to find potatoes to
fill the first order of 3 cars." The letter explains that the
reason why defendant could not comply was because others
"had gone out and bought up every lot of potatoes that could
be found," and also because "the great falling short of lots
we had bought has made it impossible for us to continue ship-
ping." These letters and telegrams justify the inference that
defendant was endeavoring to comply with his contract, and
when explaining his inability to do so he did not put his fail-
ure on the ground that there was no contract, but upon the
sole ground that he could not procure the potatoes for the
reasons stated. When he spoke of canceling plaintiff's "or-
der" he must have referred to the contract in question, which
he did not cancel until May 1st. His letter of April 20th will
bear the construction that he had in mind the two cars as
among the potatoes sold to plaintiff. We think plaintiff had

the right to assume that defendant understood plaintiff's acceptance as plaintiff understood it, and the contract "must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, sec. 1649.) As already observed, defendant, in his telegram and letter of May 1st, for the first time mentions that he has canceled the order, and on the sole ground found by the court. This, together with other facts appearing, would justify the inference that defendant had all along treated the contract as subsisting, and that plaintiff had relied on its being performed by defendant.

Defendant having notified plaintiff of his inability to perform and of having canceled the contract, plaintiff was not called upon to show its ability or readiness to pay. (*Pierce* v. *Lukens,* 144 Cal. 397, [77 Pac. 996].) It is urged that the failure of plaintiff to call attention to the unfilled contract shows that it was not relying on these two cars under the contract, and gives rise as much to an inference against plaintiff as defendant's silence does against him. But it may be answered that defendant had not, up to May 1st, completed the delivery of the three cars and was meanwhile doing all he could to find potatoes for shipment. Plaintiff might well infer that the contract for the two cars would be taken up as soon as the three cars were delivered, and as soon as they were delivered plaintiff reminded defendant of the unfilled contract for the cars in question.

As to the claim that the request that defendant "see that strictly choice stock" is shipped was a change in the original proposal, there might be force in the contention if it could be said that on the face of the letter the word "strictly" was unmistakably intended to designate a potato of different grade from one denominated as "choice," or if, by usage of the trade, there was a recognized grade of "strictly choice." We do not think, however, that requesting plaintiff to see that it got strictly choice stock was anything more than a caution that defendant would see that the potatoes came up to the grade agreed upon. Witness Brown testified as to the grades of potatoes then in the Oregon market: "There are three grades, good, or field run, choice and fancy. A good potato or field run potato is a potato just as it comes from the ground, that is, not graded; a choice potato is one that is

graded, some of the poorer ones thrown out, but not graded as close as fancy. Fancy potatoes are all the finest ones selected. There was no difference at that time between a potato designated as choice and one designated as strictly choice.'' Witness, on cross-examination, was asked why he used the words ''strictly choice'' if they meant the same as choice. The reply was that the word ''strictly'' was used ''to designate just what we want, to impress it, so a man would not make any mistake in delivering something not up to choice grade.'' And this would seem to be no more than the natural import of the word as it was used.

Appellant claims that the acceptance must be identical with the offer as well as unconditional (citing 9 Ency. of Law & Prac., subd. 2, p. 267) ; and that if the offer is to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either an expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement. If it be meant by ''identical'' that the language of the acceptance must be absolutely identical we cannot agree with appellant. Any form of expression showing clearly an intention to accept on the terms proposed,—i. e., a consent to the same subject-matter in the same sense, would be sufficient if not coupled with some new condition, or new term implying a new condition, and of this the court must judge in giving interpretation to the correspondence.

The court could permit an amendment of the complaint after the evidence had been closed and the cause had been submitted and taken under advisement and before decision. (*Maionchi* v. *Nicholini, ante,* p. 690, [82 Pac. 1052] ; *Lee* v. *Murphy,* 119 Cal. 364, [51 Pac. 549].) The court recited in its order that by the amendment ''defendants were not in any manner misled by the variance between said pleadings and proofs and that said variance is immaterial.'' Defendant did not ask to have the case reopened in order to enable him to submit additional evidence, made necessary by the amendment, nor did he by affidavit or otherwise show that the amendment would result to his injury unless the case was reopened and he given opportunity to present further evidence.

It is claimed that the court erred in allowing plaintiff to prove the price of potatoes after April 15th; and also to prove

the price at Sacramento. The evidence went to the price in Oregon and also in Sacramento, less freight from Oregon on carload lots. The contract as found by the court called for delivery as late as April 20th. The market price at no time after the 20th was less than the evidence showed, and as the court adopted the lowest price at any point shown by any of the evidence plaintiff was not injured by showing the price at Sacramento.

The motion for nonsuit was rightly denied. Immediately after the motion was denied plaintiff obtained leave to reopen his case and no motion for nonsuit was thereafter made. There was sufficient evidence when the motion was made to go to the jury. The point that the court was without jurisdiction of the person of defendant was not well taken, for he appeared by demurrer and answer and submitted himself to the jurisdiction of the court.

Error is urged because the court permitted plaintiff to prove when and how the potatoes were to be paid for and that each car was to be inspected at Sacramento before the draft for its payment was made. It is perhaps not apparent why this evidence was admitted unless it was to meet a claim that delivery and payment were to be made in Oregon f. o. b. cars. The evidence was that in previous similar contracts payment was made at Sacramento after plaintiff had inspected the potatoes, the seller sending draft with bill of lading and invoice, and this was the usage, as the evidence showed. In no event can we see that the evidence could have been prejudicial. The potatoes were not in fact purchased for or tendered to plaintiff in Oregon or elsewhere.

We have endeavored to dispose of the points made in appellant's brief, and find no prejudicial error in the record.

The order is affirmed.

Buckles, J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 14, 1905, and the following opinion was then rendered:—

CHIPMAN, P. J.—In his petition for a rehearing appellant calls attention to one point urged in the opening brief which was not noticed in the opinion, *namely,* that a custom

and usage prevailed between plaintiff and defendant and between plaintiff and other persons in Oregon with whom it had dealings, to the effect that the sale was not complete until plaintiff's acceptance of the seller's offer was confirmed by the latter. There was evidence tending to establish the custom as claimed by defendant, but there was evidence the other way sufficient to produce a conflict. Besides, if there had been a usage between the parties in former dealings it could be disregarded or waived by them in any particular transaction. We think the evidence in the present case shows that both parties treated the order as accepted without further confirmation on the part of either.

We have re-examined the other questions and do not find error in our former conclusions. We think appellant disposed, in his argument, to overlook the force of the rule where the evidence in the case is conflicting.

Rehearing denied.

Buckles, J., and McLaughlin, J., concurred.