**F. A. R. LIQUIDATING CORP.**

v.

**BROWNELL, Atty. Gen.**

No. 11076.

United States Court of Appeals
Third Circuit.

Argued Oct. 23, 1953.

Decided Jan. 13, 1954.

Irwin A. Seibel, Washington, D. C. (Dallas S. Townsend, Asst. Atty. Gen., Leonard G. Hagner, U. S. Atty. for Dist. of Delaware, Wilmington, Del., James D. Hill, George B. Searls, Attys., Department of Justice, Washington, D. C., on the brief), for appellant.

E. Ennalls Berl, Wilmington, Del. (Berl Potter & Anderson, Wilmington, Del., Ernest S. Meyers, Lawrence R. Eno, Laporte & Meyers, New York City, on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from an Order of the District Court for the District of Delaware granting the plaintiff, F. A. R. Liquidating Corporation ("FAR") summary judgment and requiring the defendant, the Attorney General of the United States, to transfer to FAR all interest in certain patents. The controversy is detailed in the opinion of the Court below,[1] but the following summarization will suffice for the purposes of this appeal.

On June 26, 1935, Farnsworth Television, Inc. ("Farnsworth") entered into an agreement with a German concern, Fernseh Aktiengesellschaft ("Fernseh") under which it granted licenses to Fernseh in certain European countries under its patents relating to television, radio, talking pictures, and electrical transcription, and received from Fernseh similar rights under the latter's patents in the United States and certain other countries. In December 1938, FAR acquired all the patents of Farnsworth and Fernseh consented to the assignment of its existing agreement with Farnsworth to FAR. The latter became dissatisfied with the agreement, and in November 1939, communicated its desire to Fernseh for its revision. Thereafter, on February 24, 1941, FAR by cable, initiated negotiations with Fernseh for a revision of the agreement. Fernseh did not reply. Two days later, on February 26th

FAR's Board of Directors authorized its officers, subject to its approval, to negotiate the revision. On March 17th FAR repeated its former cable of February 24th to Fernseh. The latter finally answered by cable on April 1st suggesting more definite proposals. FAR then cabled Fernseh a more specific proposal on April 4, 1941—i. e. assignment of all FAR's patent rights in Europe to Fernseh and the assignment to FAR of all Fernseh's patent rights in the United States. No reply was had from Fernseh until May 13th when it, in turn, suggested (1) that Fernseh's pre-war United States patents and patent applications, i. e. those granted or filed prior to September 1, 1939, were to be assigned to FAR and the latter's pre-war European patents and applications were to be assigned to Fernseh; and (2) that the new arrangement would supersede the existing agreement as of the date of receipt by FAR of a cable from Fernseh confirming FAR's acceptance of the proposal. On May 15, 1941, FAR cabled its reply to Fernseh's proposal. This cable read as follows:

"We offer to make agreement with Fernseh as set forth in your cable of May thirteenth nineteen hundred forty-one excepting only quote fourth unquote point which point is not possible because of existing Farnsworth RCA and RCA-European agreements (stop) Fernseh-Farnsworth agreements now existing to be abrogated as of effective date of present proposed agreement (stop) Regarding quote sixth unquote point (comma) costs to be borne by party handling (stop) If you wire your acceptance of this offer our confirming cable to you will constitute a binding agreement between us effective upon date of confirming cable (stop) Have arranged special meeting our directors for May twentieth to approve agreement if acceptable to you (stop) If this arrangement accept-

1. F. A. R. Liquidating Corp. v. McGranery, D.C.Del.1953, 110 F.Supp. 580.

able to you suggest you also cable authority to representative in United States to execute for you formal patent office assignment."

No reply having been received from Fernseh, FAR's Board postponed its meeting from May 20th to May 22d. On May 22 FAR's Board ratified and approved all action taken regarding the cables of May 13th and May 15th and authorized the consummation of the arrangements as set forth in those cables, with such changes as the president of FAR might deem necessary. Still not having heard from Fernseh, on May 28th FAR cabled again. The cable started: "We cabled you an May 15th as follows". There then was quoted in full the cable of May 15th. The cable concluded: "Our directors have approved agreement (stop) awaiting your answer."

On June 4th Fernseh cabled its receipt of the May 28th cable and advised FAR to expect its final answer in a few days. Fernseh's answer, which was cabled on June 14th read as follows:

"We accept your offer in your cable of May twenty-eight 1941 Consider abrogation of existing agreements and mutual assignment of patents as binding (stop) We authorize Mr. Martin as our representative by separate cable. Suggest you also cable authority to representative here for instance Wilhelm Reichel Berlin. * * *"

Fernseh also on June 14th sent a cable to a Mr. Martin, patent attorney and secretary of FAR, which read as follows:

"We authorize hereby Edwin M. Martin 3700 East Potiac Street Fort Wayne Indiana to sell assign and transfer the whole rights titles and interests in and to all letters patent for which he is appointed as our attorney and filed in our name or in the name of Fernseh Aktiengesellschaft in the United States on and before September first 1939."

However, on June 14, 1941, at 1:10 P. M. in Washington, D. C., Executive Order No. 8785 [2] went into effect. This Order prohibited dealings in German property except under Treasury license. On June 20, 1941, FAR applied to the Treasury Department for a license, but action was delayed on the application until after the outbreak of war with Germany in December, 1941. On June 18th by Vesting Order No. 27, and on September 24, 1942, by Vesting Order No. 171, the Alien Property Custodian vested Fernseh's United States patents pursuant to Section 5(b) of the Trading With the Enemy Act, 50 U.S.C.A. Appendix, § 5(b). FAR filed its claim with the Custodian in May 1943, and due to the continued failure of the Custodian and his successors to determine its claim, brought this suit on May 29, 1952, under Section 9(a) of the Trading With the Enemy Act, 50 U.S.C.A. Appendix, § 9(a), in the United States District Court for the District of Delaware against the Attorney General of the United States, Successor to the Alien Property Custodian, to have itself declared the owner of those patents. FAR moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C., on the grounds that there was no genuine issue as to any material fact, and that it was entitled to relief because, at the time of vesting, it was lawful owner of the patents. Defendant cross moved for summary judgment on the ground that at the time of the Vesting Orders Fernseh was still the owner of the patents. According to FAR's theory, the correspondence between it and Fernseh showed that there was consummated a contract and an assignment upon the deposit by Fernseh of an acceptance cable with the German cable office on June 14, 1941, prior to 1:10 P. M. when Executive Order 8785 went into effect. According to defendant's theory, the correspondence between the parties showed that the transaction could not be concluded without a confirming cable from FAR after

2. 3 C.F.R. (Cum.Supp.1941), 12 U.S.C.A. § 95a note.

receipt of Fernseh's acceptance. The District Court rendered an opinion granting FAR's motion and denying defendant's cross-motion, and on March 10, 1953, ordered defendant to turn the patents over to FAR within 60 days.

Defendant bases this appeal upon three contentions: (1) summary judgment is improper where there is a genuine issue as to the meaning of written words; (2) the correspondence between Fernseh and FAR never consummated in a contract as the latter never confirmed as required by its cable of May 15th which was quoted in full in its cable of May 28th; and (3) since there was a genuine issue of fact as to the time when Fernseh's acceptance cable of June 14th was sent, it was error for the lower court to grant summary judgment in favor of FAR. These contentions will be discussed in order.

■ (1) Defendant's first contention is that the granting of summary judgment is erroneous where there is a genuine issue as to the meaning of written words. According to FAR's theory, the correspondence between it and Fernseh established that a contract and an assignment of the patents were consummated upon the deposit by Fernseh of an acceptance cable with the German cable office on June 14, 1941. In reply defendant urges that the correspondence between the parties established that the transaction could not be concluded without a confirming cable from FAR after receipt of Fernseh's acceptance cable. Defendant argues that since the language of the correspondence is ambiguous, a question of fact was presented and therefore it was error to grant summary judgment. We do not subscribe to this contention. It is well settled that where all of the matters relied upon as constituting a contract appear wholly from writings, the question as to whether a contract exists is one of law and for the court. Milliken-Tomlinson Co. v. American Sugar Refining Co., 1 Cir., 1925, 9 F.2d 809, rehearing denied, 1 Cir., 1926, 10 F.2d 973; Canton Cotton Mills v. Southwest Overall Co., 8 Cir.,

1925, 8 F.2d 807; General Motors Corp. v. Abell, 1 Cir., 1923, 292 F. 922; Scanlon v. Hodges, 8 Cir., 1892, 52 F. 354; Ennis Brown Co. v. W. S. Hurst & Co., 1905, 1 Cal.App. 752, 82 P. 1056.

■ (2) Defendant next contends that, since FAR never confirmed as required by the language of its cable of May 15th, which was quoted in full in its subsequent cable of May 28th, no contract could be consummated. But this construction of the correspondence between FAR and Fernseh is erroneous. The modern law of contracts construes both acts and words as having the meaning which a reasonable person would put upon them in view of the surrounding circumstances. 1 Williston, Contracts § 22A (2d ed. 1936). It will be recalled that at the February 26th meeting of FAR's Board, it had been provided that any new agreement was subject to the approval of the Board. This was the reason for the provision in FAR's May 15th cable that the agreement would be binding only from the date of FAR's cable confirming Fernseh's acceptance. The cable of May 15th indicated this when it stated:

"If you wire your acceptance of this offer our confirming cable to you will constitute a binding agreement between us effective upon date of confirming cable (stop) Have arranged special meeting our directors for May 20th to approve agreement if acceptable to you."

Although no reply from Fernseh had yet been received, FAR's Board met on May 22d. It ratified all action taken so far and authorized the consummation of the proposed arrangements, with such changes as the president of the corporation in his discretion might deem advisable. In addition, the officers of the corporation were given general authority to do any and all things which they in their discretion might deem necessary or advisable in order to complete the transaction. With such approval there was no longer any need for a confirming cable. Accordingly, FAR sent its cable of May 28th. It noted that on

May 15th a cable had been sent to Fernseh. There then was quoted in full the cable of May 15th, probably for the reason, as contended by FAR, that it could not be certain that the May 15th cable had been received by Fernseh. In conclusion, the cable stated: "Our directors have approved agreement (stop) Awaiting your answer." This cable indicated that the necessity of a confirming cable had been eliminated and that all that was lacking was Fernseh's acceptance. It seems clear that Fernseh understood from the cable of May 28th that a confirming cable from FAR was no longer necessary. Fernseh's cable of June 14th stated: "We accept your offer in your cable of May 28, 1941. Consider abrogation of existing agreements and mutual assignment of patents as binding." A fair reading of this cable shows that Fernseh understood that the last act necessary for consummating the transaction had been done. Also on June 14th, Fernseh cabled authority to Mr. Martin (patent attorney and secretary of FAR) to execute the formal assignment on Fernseh's behalf. Fernseh would hardly have put such power in FAR's hands had it not regarded the contract as complete. It cannot be gainsaid that at this stage of the correspondence such an interpretation was a reasonable one. Thus, the facts on and before June 14, 1941, demonstrate that no confirmatory cable from FAR was required to consummate the contract.

This conclusion is supported by the subsequent acts and declarations of FAR and Fernseh. Much argument was pressed, pro and con, on this point, both at the court below and on this appeal. However, this phase of the case has been dealt with by Chief Judge Leahy so extensively, and with such particularity, that no more need be said here than that his opinion in this regard is adopted.

(3) Defendant finally contends that it was error for the court below to grant summary judgment in favor of FAR, since there was a genuine issue of fact as to the time when Fernseh's acceptance was sent. This contention is well founded. The general denials in defendant's answer put this question of fact in issue. Moreover, it was brought to the attention of the court below when, at the hearing on the motions for summary judgment, defendant stated:

"It is perfectly clear to me, Your Honor, and I think the plaintiff will have to concede it—that if the time when the cable was sent is significant, there is an issue of fact as to that. And if the court must decide that question, then neither motion can be granted. We take a view of the case which suggests to us that the question need not be decided and that possibly, therefore, there is no issue of fact."

FAR's motion for summary judgment was premised on the theory that the correspondence between it and Fernseh demonstrated that an assignment was consummated upon the deposit by Fernseh of an acceptance cable with the German cable office on June 14, 1941, prior to 1:10 P. M. (the effective date of the Executive Order). It was essential, therefore, to FAR's case that it be shown that Fernseh's acceptance was sent before 1:10 P. M. on June 14, 1941.

FAR argues on appeal, however, that there is not the slightest doubt but that Fernseh's June 14th cable was dispatched prior to 1:10 P. M. As "clearly proving" this contention FAR relies heavily on a detailed affidavit of an expert from RCA Communications, Inc. wherein the *opinion* is rendered that the cable was transmitted before 1:10 P. M. on June 14th. But, although an affidavit filed in support of a motion for summary judgment may be considered for the purpose of ascertaining whether an issue of fact is presented, it cannot be used as a basis for deciding the fact issue. Frederic Hart and Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580. In addition, it is obvious from a reading of the affidavit that it is nothing more than an opinion. Sum-

mary judgment on such evidence is improper. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967.[3] Other evidence is similarly pressed as substantiating this point of FAR, but it is manifest that even when this evidence is considered, there remains considerable doubt as to the truth of the matter. The law is clear that one who moves for summary judgment has the burden of demonstrating that there is no genuine issue of fact. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 1951, 190 F.2d 817. FAR has not met the burden here.

FAR also contends that since defendant cross-moved for summary judgment, it is now precluded from questioning the propriety of disposing of the case upon such a motion. But, it is well established that cross-motions for summary judgment do not warrant the trial court granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed. Walling v. Richmond Screw Anchor Co., 2 Cir., 1946, 154 F.2d 780, certiorari denied, 1946, 328 U.S. 870, 66 S. Ct. 1383, 90 L.Ed. 1640; Begnaud v. White, 6 Cir., 1948, 170 F.2d 323; Lloyd v. United Liquors Corp., 6 Cir., 1953, 203 F.2d 789, 794. 6 Moore, Federal Practice § 56.13 (2d ed. 1953).[4]

In the instant case there was a genuine issue of fact as to the time when Fernseh's cable was sent, and accordingly the court below erred in granting summary judgment in favor of FAR.

3. It was there held that affidavits of eight witnesses on behalf of the defendant were insufficient to sustain defendant's motion for summary judgment.

4. In Begnaud v. White, 6 Cir., 1948, 170 F.2d 323, 327, the Court succinctly stated the applicable rule as follows:

"The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists. Each, in support

For the reasons stated the judgment and order of the District Court will be reversed and the cause remanded with instructions to the District Court to proceed in accordance with this opinion.

of his own motion, may be willing to concede certain contentions of his opponent, which concession, however, is only for the purpose of the pending motion. If the motion is overruled, the concession is no longer effective. Appellants' concession that no genuine issue of fact existed was made in support of its own motion for summary judgment. We do not think that the concession continues over into the Court's separate consideration of appellee's motion for summary judgment in his behalf after appellants' motion was overruled."