**KEUFFEL & ESSER COMPANY,**
Plaintiff,

v.

**CHARLES BRUNING CO., Inc.,**
Defendant.

**Civ. A. No. 736–62.**

United States District Court
D. New Jersey.
June 21, 1963.

Bourne, Schmid, Burke & Noll, Summit, N. J., by Coleman Burke, Summit, N. J., and J. Russel Juten, Peter F. Willig, Hoboken, N. J., Morgan, Finnegan, Durham & Pine, by Hobart N. Durham, New York City, and John C. Vassil, of counsel, for plaintiff.

Yauch & Fagan, Newark, N. J., by James E. Fagan, Newark, N. J., and Mason, Kolehmainen, Rathburn & Wyss, by Richard D. Mason, M. Hudson Rathburn, Chicago, Ill., Warren D. McPhee, and S. L. Goldstein, Chicago, Ill., of counsel, for defendant.

WORTENDYKE, District Judge.

Of this patent infringement action, brought under 35 U.S.C. §§ 271 and 281, jurisdiction is conferred on this Court by 28 U.S.C. § 1338.

The patent alleged to be infringed is United States Patent No. 3,028,240 ('240) issued April 3, 1962, upon application filed January 15, 1959, to Georg Werner and Gottlieb von Poser, assignors of the plaintiff, Keuffel & Esser Company (K&E). The defendant, Charles Bruning Company, Inc. (Bruning), has moved for summary judg-

ment in accordance with F.R.Civ.P. 56(b), declaring invalid claims 1 to 5 inclusive, of the patent in suit. In support of its motion, Bruning contends that the claims relied upon by K&E are anticipated by British Patent No. 538,-869, issued to Humphrey Desmond Murray and Arthur Tyrrell ('869 or British patent or Murray-Tyrrell) on January 11, 1940, which renders the claims in suit invalid under 35 U.S.C. § 102(b). Movant also contends that the differences, if any, between the subject matter sought to be patented in '240, and the prior art, are such that the subject matter as a whole would have been obvious, at the time the invention claimed was made, to a person having ordinary skill in the art to which that subject matter pertains, rendering the subject matter unpatentable under 35 U.S.C. § 103. Bruning, however, relies most heavily upon its § 102(b) ground and, in my opinion, the question of obviousness under § 103 involves issues of fact which would preclude the granting of the motion upon that ground. Both parties concede that claim 5 is typical of and includes the subject matter of claims 1 through 4 inclusive of the patent in suit. Claim 5 reads as follows:

> "A light sensitive diazotype material of the single component type comprising a base material coated with a light sensitive composition including a light sensitive diazo compound of 4-morpholine-2, 5-di-n-butoxy-benzene-1-amine."

Plaintiff characterizes its invention as "a diazotype paper having a butoxy diazo coating on it"; but disclaims any invention of a new diazo composition. The specifications of the patent in suit disclose that the diazo compound with which the copying paper is coated is a semiwet or one-component material which reacts with another compound, known as a coupler, to form a dye. The coupler is the developing solution through which the diazo sheet is passed after exposure to the light. The area of the dye corresponds to the area which has been protected by the printed material on the master sheet during the exposure to the light. By using various diazo compounds and various coupling agents, a variety of colors may be produced. The claimed novelty is the chemical structure of the diazo compound with which the paper is coated. It is further stated that the claims in suit and the prior art disclose an amino group contained in a hexagon representing a benzene ring with NH2 attached to one corner called a benzene amine. Compounds described in the patent in suit and known to the prior art contain a morpholine ring comprised of an oxygen atom, 4CH2 group and a nitrogen atom. The morpholine ring is joined by a nitrogen atom to a corner of the benzene ring hexagon. This junction corner is opposite to the NH2 (amino) group.

Diazine (or diazin) is the term given to any of three parent compounds $C_4H_4N_2$ containing a ring of four carbon and two nitrogen atoms. The prefix diazo- denotes the presence of a group of two nitrogen atoms ($N_2$) in direct union with one hydro-carbon radical and usually with some other group or atom. Diazo compounds are those in which the $N_2$ group forms a part of a cation (a positive ion which travels to the cathode in electrolysis.)

The morpholine-benzene-amine structure is fundamental to all the diazo compounds disclosed in the claims here in suit and the same ring structure appears in the Murray-Tyrrell British patent and in the earlier United States patent number 2,298,444 ('444) issued October 13, 1942 to Weissberger and Vanselow, on application filed October 15, 1940, relating to light sensitive diazotype material. Bruning relies upon the Weissberger and Vanselow patent in support of its contention that the claims here in suit are invalid under § 103 of the Act. It is movant's contention that the only differentiating features between these prior art patents and the patent in suit are the substituents which are attached to the 2 and 5 positions on the benzene ring, and which are alkoxy radicals, i. e., alkyl radicals attached through oxygen.

The typical claim 5 in suit discloses a butoxy substituent at the 2 position and at the 5 position of the benzene ring. However, alkoxy radicals are a class of substituents which includes methoxy radicals $(OCH_3)$, ethoxy radicals $(OC_2H_5)$, propoxy radicals $(OC_3H_7)$, and butoxy radicals $(OC_4H_9)$. Each species of the class of alkoxy radicals varies from the next species in succession by one carbon atom. The diazo compound described in the claims in suit is defined in terms of the amine from which it is produced. Claim 5 describes the 4-morpholine-2, 5-di-n-butoxy-benzene-1-amine. Bruning asserts that the Murray-Tyrrell British patent discloses the class of diazo compounds from which the specific diazo compounds described in claims 1 to 5 of the patent in suit are selected. Upon this assertion, therefore, movant bases its contention that the British patent anticipates the claims in suit as a matter of law. The secondary ground of the present motion is to be found in defendant's contention that the differences between the subject matter of the claims in suit and the disclosure of United States patent '444 are such as would be obvious to one having ordinary skill in the art, within the contemplation of § 103 of the Act.

It is obvious that the British patent discloses a morpholine-benzene-amine class of compounds which contain alkoxy substituents in the 2 and 5 positions. Butoxy is an alkoxy substituent. Therefore, argues the movant, the disclosure of the alkoxy class of compounds in the British patent is tantamount to naming each of the conventional members of that class, including the butoxy substituent. In other words, says movant, the British patent, by designating O-alkyl for the 2 and 5 positions of the benzene ring, necessarily suggests methoxy, ethoxy, propoxy and butoxy as substituents for these positions. Because plaintiff's expert, on deposition, denied knowledge of any alkoxy substituent in diazo compounds used in photocopying material which includes more than five carbon atoms, defendant contends that the alkoxy

class consists of five members, namely methoxy, ethoxy, propoxy, butoxy and amyloxy. Accordingly, it is contended by Bruning that the disclosure of the alkoxy class by the British patent amounts to a disclosure of each of its five members, including butoxy.

In support of movant's contention that disclosure of the genus must be tantamount to a disclosure of the species making up the genus, defendant cites and relies upon Application of Henze, (1950) 181 F.2d 196, 37 CCPA 1009; Application of Rosicky, (CCPA 1960) 276 F.2d 656; and Application of Petering, (CCPA 1962) 301 F.2d 676. Each of these cases was an appeal from a decision of the United States Board of Patent Appeals which had affirmed the Examiner in rejecting an application for a patent upon a chemical formula. In Henze, the compound of the prior art disclosure differed from the claim in the application by $CH_2$, i. e., both were homologues; the claimed compound being the next higher homologue of the compound disclosed in the prior art publication. The case held that "[t]o those skilled in the chemical art, one homologue is not such an 'advance' over an adjacent member of the series as requires invention, unless the beneficial properties realized in the new homologue lie clearly outside of the expectations which knowledge of his science would inform the trained chemist should be inherent in the product." Both formulae produced a drug having anticonvulsive properties. Movant in the case at bar disclaims reliance upon any homologous relationship between the British Murray-Tyrrell patent "o-alkyl" disclosure and the claims here in suit. The patent application in Rosicky described "a process of producing xanthene derivatives having a basic side chain in 9-position, * * * [by] contacting xanthene in a non-polar organic solvent with a sodium-transferring agent in *statu nascendi* and adding to the resulting xanthene sodium a halogen substituted organic base." The prior art cited against the application (United States Patent No. 2,676,971,

issued to Cusic) taught the activation of the 9-position of xanthene by using an ether solution of n-butyl lithium, or a toluene solution of lithium amide or sodamide. The Court found that the compounds claimed by the applicant were within the scope of the generic disclosure of the reference, because "[t]he specification of the patent describes not only the compounds *specifically* (emphasis supplied) named therein, but also those in which either a piperidine or a pyrrolidine heterocyclic ring is utilized in lieu of a dialkylamine." The rejection of these claims of the application was affirmed because "the particular groups (piperidine and pyrrolidine) [were] disclosed in the [prior art] reference as the equivalent of other amino radicals and are so considered generally in the medicinal art, as well as in their preparation, and would be so recognized by one skilled in the art." The Court held that a specific exemplification was not necessary to constitute anticipation. In Petering, certain claims on isoalloxazines as effective antivitamins and antimetabolites were held patentable over the prior art. The prior art cited against the application made a broad generic disclosure encompassing a vast number and perhaps even an infinite number of compounds, falling within the alkyl group. Therefore, said the Court, "[e]ven though applicants' claimed compounds are encompassed by this broad generic disclosure, we do not think this disclosure by itself *describes* applicants' invention, as defined by them in any of the appealed claims, within the meaning of 35 U.S.C. § 102(b)."

Against the foregoing cases, plaintiff cites In re Papesch (CCPA 1963) 315 F.2d 381, which movant would avoid as turning upon § 103 of the Patent Act, and therefore irrelevant to movant's reliance upon the anticipation by the British patent under § 102(b). In Papesch, the claimed invention was the chemical formula "2,4,6-TRIALKYLPYRAZOLO (4,3-d)-4,5,6,7-TETRAHYDROPYRIMIDINE - 5, 7 - DIONES." The specification relates that "[t]he trialkyl compounds of this invention have been found to possess unexpectedly potent anti-inflammatory activity in contrast to the related trimethyl compound. The instant compounds are also diuretic agents." The case is clearly distinguishable from that at bar because, as the court states, there was presented (in Papesch) "a single clean-cut issue of law. The claims (were) rejected only on the ground that they are unpatentable over a single reference which discloses what is conceded to be a lower homolog of the claimed compounds * * * and proof has been given showing that the compound of claim 2, 'a representative member of' the group of compounds claimed, possesses an advantageous pharmacological property shown not to be possessed by the prior art compound." The court, in Papesch, reversed the rejection of the application upon § 103; enunciating the proposition: "If that which appears, at first blush, to be obvious though new is shown by evidence not to be obvious, then the evidence prevails over surmise or unsupported contention and a rejection based on obviousness must fall." (315 F.2d at 386.).

 Plaintiff makes the threshold contention that the present motion should not prevail because the record presently discloses genuine issues of fact upon which the ultimate question of patent validity depends. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir. 1948, 169 F.2d 580; Silvray Lighting v. Versen, D.C. N.J. 1950, 10 F.R.D. 507. The burden of demonstrating the absence of such issues of fact is upon movant. F.A.R. Liquidating Corp. v. Brownell, 3 Cir. 1954, 209 F.2d 375. In a patent infringement case, if it appears that "no substantial dispute of fact is presented, and that the case may be determined by a mere comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the questions of invention and infringement may be determined as ques-

tions of law." United States v. Esnault-Pelterie, 1938, 303 U.S. 26, 30, 58 S.Ct. 412, 414, 82 L.Ed. 625.

Affidavit of Terry Orban Norris, Ph.D., Director of Chemical Research and Development for K&E, states that he rates light sensitive diazo derivatives of 4-morpholine-2, 5-di(n) butoxy benzene-1-amine as superior to prior compounds used in one component semi-wet system of diazo type reproduction because they had extremely high printing speed, very fast coupling speed, and were the first to produce a satisfactory dense black line image combined with desirably high printing speed in the single component semi-wet system, without excessive bleeding. According to that affiant, of the known light sensitive diazo compounds which are sufficiently light sensitive to be used with fluorescent lamps in the semi-wet process, only those prepared from 4-morpholine-2, 5-di(n)-butoxy-benzene-1-amine yield a commercially acceptable black image which is substantially non-bleeding. He concedes that use of the substituent di-propoxy for butoxy is almost equally effective to achieve black color and non-bleeding properties, but states that both are superior in respect of those properties to the prior art diazo compounds disclosed by Murray & Tyrrell and Weissberger. He admits that "compounds having portions of their structure resembling those of the invention of the patent in suit * * * are 4-morpholine-2, 5-di-methoxy-benzene-1-amine and 4-morpholine-2, 5-di-ethoxy-benzene-1-amine, of which the latter is specifically disclosed by the prior British patent No. 538,869, and is the only dialkoxy-morpholino compound disclosed by said British patent." We are told that the structure of alkoxy groups consists of an oxygen atom linked to an alkyl residue, and that methoxy, ethoxy, and a myriad of other groups are included within the class known as alkoxy groups; but that, with the appropriate number of hydrogen atoms, there are 7,672 alkyl groups and a similar number of alkoxy groups included within the term alkoxy; and, if

as many as 25 carbon atoms are included, there are 36,797,588 possible alkyl group isomers.

Plaintiff also presents affidavit of Gerhard Usbeck, Ph.D., Senior Research Chemist at Kalle A. G. of Weisbaden-Biebrich, Germany, disclosing preparations of various diazo compounds according to various formulae, and exhibits sample prints made by the use of certain of these compounds annexed to his affidavit, which tend to support plaintiff's contention that the compound taught by the patent in suit has properties which excel those of the Murray & Tyrrell formula. I cannot conclude, upon what has been submitted on this motion, that the patent in suit is invalid as a matter of law for anticipation by Murray & Tyrrell under 35 U.S.C. § 102(b).

Movant's reliance upon the Weissberger patent, U. S. No. 2,298,444, is for support of its contention that the subject matter of the asserted invention claimed in the patent in suit would have been obvious under 35 U.S.C. § 103. That patent ('444) taught the employment of aminophenyl piperidine and aminophenyl morpholine compounds as light sensitive diazotype materials for copying purposes. Whether the teachings of the '444 patent would render obvious to a person having ordinary skill in the art the invention claimed by the present patent is a question of fact. This is conceded by movant. See also Carbide & Carbon Chemicals Corp. v. Coe, 1938, 69 App.D.C. 372, 102 F.2d 236; Dewey & Almy Chemical Co. v. Mimex Co., Inc., 2 Cir. 1942, 124 F.2d 986.

In the case at bar, as in Cee-Bee Chemical Co., Inc. v. Delco Chemicals, Inc., 9 Cir. 1958, 263 F.2d 150: "What the prior art was and what the patentee did to improve upon it are questions of fact. Whether what the patentee did is properly to be classified as an invention is a question of law." What the Murray-Tyrrell and Weissberger-Vanselow patents taught and what Werner and von Poser did to improve upon it are questions of fact which this

Court, in its ignorance of the field of organic chemistry, cannot intelligently and justly resolve without the assistance of evidence produced upon a plenary trial.

The motion for summary judgment is denied. Present order accordingly.