## LLOYD v. UNITED LIQUORS CORP. et al.

### No. 11594.

United States Court of Appeals
Sixth Circuit.

April 16, 1953.

L. E. Gwinn and Don Owens, Jr., Memphis, Tenn. (Nelson, Norvell, Owens & Floyd, Memphis, Tenn., on the brief), for appellant.

Hamilton E. Little, Memphis, Tenn., Arthur J. Keeffe, Chattanooga, Tenn., for appellees.

Noone, Tanner & Noone, Chattanooga, Tenn., on the brief, for United Liquors Corp.

Frank J. Glankler, Hamilton E. Little, Shea & Pierotti, Tual & Morgan, Memphis, Tenn., on the brief, for Bluff City Beverage Co., and others.

Edward P. Russell, Memphis, Tenn., on the brief, for Consolidated Distributors.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

This action for treble damages in the amount of $156,000 was brought by appellant, a duly licensed retail liquor dealer in Memphis, Tennessee, for alleged violation of certain anti-trust statutes of the United States, sections 1, 13(a), (b) and (d), 13a and 15, Title 15 U.S.C.A., against numerous wholesale liquor dealers doing business in Memphis and neighboring territory in Tennessee, and also against the Memphis Retail Package Stores Association, Inc., a corporation comprised of some 170 retail liquor dealers in Memphis.

The various defendants filed answers denying the crucial allegations of the complaint and thereafter all filed either motions to dismiss the complaint or motions for summary judgment. Though varying in some details, the motions of the various appellees present the proposition that there was no genuine issue raised as to any material fact; and that the District Court had no jurisdiction, inasmuch as the allegations of the complaint and the testimony of appellant, taken by pre-trial deposition, disclosed that the appellees are engaged solely in intrastate or local commerce or trade, that the alleged acts of the defendants on which suit is brought occurred in and solely affect intrastate or local commerce, that any possible effect of the alleged acts upon interstate commerce was accidental, secondary, remote and conjectural, and that the court accordingly was without jurisdiction.

After considering the pleadings and the pre-trial deposition of appellant, Jack H. Lloyd, taken by appellees on notice pursuant to Rule 26 of the Rules of Civil Procedure, 28 U.S.C.A.; and after hearing argument of counsel and engaging in colloquy with them, the District Judge dismissed the cause for lack of jurisdiction upon the above-stated grounds advanced by appellees' attorneys.

The complaint averred that the defendants (now appellees) unlawfully and in violation of the anti-trust statutes had entered into a trust, combination and conspiracy for the purpose and with the re-

sult of restraint of trade, lessening of competition, fixing and controlling the price of spiritous and vinous liquors from the wholesalers to the retailers in Memphis and Shelby County, Tennessee; that, by their unlawful and concerted efforts and acts, they had fixed and controlled the price of liquor in the named locale; and that they had "resorted to coercion, threats, duress and boycotting, all of which is illegal and *affected interstate commerce,* and in violation of the aforesaid statutes of the United States." [Italics in the foregoing quotation have been supplied.] It was averred further that the conspirators in the aforementioned unlawful combination had by their concerted acts fixed the prices of liquor to the retailers and to the consumers in Shelby County thereby eliminating competition and establishing an artificial price level, that the conspirators were giving rebates and discounts to retailers in adjoining and neighboring counties, all of whom were in competition with appellant; and that such actions were unlawfully discriminatory and resulted in raising the price of liquor to consumers in Shelby County.

The complaint charged further that the defendants, by their concerted acts, had combined to maintain specified minimum prices to the consumers and had induced and coerced wholesalers, through boycotts and boycott threats or other reprisals, to refrain from selling to price-cutting retailers who, through volume buying, could and would "pass on a saving to the consumer."

Finally, the complaint alleged: "That prior to August, 1949, the defendant Wholesale Liquor Dealers were engaged in fair competition in giving discounts for volume buying and such discounts were passed on to the consumer in Shelby County by retailers; that in or about August, 1949, the defendant Memphis Retail Package Stores Association, Inc., acting as a representative of the 170 members thereof, in an effort to and with the result of forcing a discontinuance of the aforesaid discounts for volume buying invoked coercion and boycotting upon the wholesalers, some of whom were unwilling to enter into said conspiracy; that as the result of the boycotting, coercion and other unlawful acts, the fair

competition and practice of discounting for volume buying was discontinued and prohibited, as a result of which an artificial price level and price control was placed upon their commodities in Shelby County. That said illegal price control and resulting price fixing to the consumer has remained in effect under constant threats of coercion and boycotting by the defendant Memphis Retail Package Stores Association, Inc., and members thereof, acting individually and collectively to carry out the purpose of the Association, and after the inception of the above described conspiracy, the wholesalers or some of them, have taken concerted steps to continue and preserve the unnatural and illegal price level existing in Shelby County as a result of the conspiracy to fix prices and to discriminate against plaintiff and others who refused to join in illegal schemes, practices and discriminations, for the purpose of maintaining uniform minimum prices for the sale of said commodities in Shelby County."

As above stated, the District Judge sustained the contention of the defendants below that, as shown by the complaint, their acts complained of affected solely intrastate or local commerce and had no primary or direct effect on interstate commerce. Appellant contends that the allegation of his complaint, that the illegal coercion, threats, duress and boycotting by the defendants in violation of the anti-trust statutes "affected interstate commerce", was a factual allegation and not merely a conclusion of the pleader. In view of the liberal intendments to be accorded the pleader on motions to dismiss and for summary judgment, strength inheres in this argument; but we think the correctness of appellant's position does not necessarily rest upon such interpretation.

In our judgment, the Court should have allowed appellant to file the amendments to his complaint, proposed by his attorney after the argument of the motions to dismiss and for summary judgments, even though appellant's attorney had not complied with the request of the Court that any amendment to the complaint should be presented before the argument. Prior to the argument, the attorney for appellant di-

rected the attention of the Court to the fact that the required ten days' notice of the motions for summary judgment had not expired at the time of the hearing of the motions, but stated that he was willing to go on, if, in the course of the presentation, he might ask the Court for the privilege of further amending, which he did not think would be necessary, but he added that he did not desire to waive his right to apply for amendment. He said: "With that statement, we are ready to proceed."

An attorney for one of the defendants demanded that appellant's advocate be required to state presently his intention with respect to amendment. The Court inquired of the latter what he had in mind concerning amendments, and received the reply: "We have no amendment that we want to offer now." Further discussion ensued, in which the attorney stated that he thought it would be unnecessary to ask any further amendment, but that, "in the multitude of cases, the many distinctions that are drawn in the application of the Federal Anti-trust statutes," there might be some matter apparently unimportant or insignificant that could be dealt with when reached. He argued that he did not think it necessary to say anything concerning the offering of any proposed amendment that might be considered material in the development of the case, adding that according to federal practice and "the rulings of our court of appeals" amendments may be made even after a case has been decided.

The Judge stated that, while considerable latitude with respect to amendments is permitted under the rules, the matter is usually directed to the sound discretion of the Court. He again questioned the attorney as to what he had in mind with respect to amendment. The attorney responded: "I don't think it will be necessary to offer any, but I did not want it to be said, if I did reach that conclusion in the development or discussion of the case, to come along and say, 'Why didn't you discuss that before we entered into this matter?' Of course, it is discretionary with the Court, as a rule, to grant or refuse amendment."

Further discussion was indulged, following which the Judge commented: "I don't believe there is really anything before the Court. You are asking no amendment at this time?" Counsel replied, "No, sir." The Court pointed out that the attorney was not asking for a continuance and had virtually said that he was ready to argue the motion; then asked: "Are you ready or not?" The lawyer replied: "Yes, we are ready."

After argument, in which numerous counsel participated, the attorney for appellant offered an amendment to the complaint, to the filing of which objection was made and sustained. The Court said: "I don't believe the matters set out in the amendment are material. We have been arguing this matter here all morning now, and counsel did state in the outset that he might desire to offer some type of amendment, and he did not state what it was at that time. And I rule that the amendment is not seasonably offered, and even though I don't consider the matters set out in the proposed amendment are material, I just rule it comes too late." The attorney for appellant then offered a second amendment acceptance of which was likewise denied.

The two proffered amendments were, as follows: (First Amendment) "That all the whiskey and akin commodities sold in Tennessee, with the exception of one brand, is distilled, manufactured and shipped into Tennessee from various States of the United States other than Tennessee; that the purpose, intent, necessary tendency and effect of said combination and conspiracy and each of the acts of the defendants hereinabove described were and have been unreasonably to raise, fix, maintain and stabilize the wholesale price of alcoholic beverages shipped into Tennessee from the various States of the United States other than the State of Tennessee.

"That the merchandise used in the decorations for display in plaintiff's store belongs to and is the property of out of state distillers; that the personnel who install and prepare said displays are employees of out of state distillers.

"That the retailers, when they entered into fair trade agreements, contracted directly and solely with out of state distillers.

"Plaintiff further alleges that prior to the decision of the Supreme Court, holding illegal state statutes that required non-signers of so-called Fair Trade Agreements to observe liquor prices fixed in such agreements, made with retailers by producers of whiskey, practically all the Memphis retailers had signed agreements fixing the minimum price at which liquor bearing trade-names could be sold, these agreements being between such retailers and producers of whiskey outside the State of Tennessee.

"Subsequent to such decision the defendants cooperated in an effort to obtain the restoration of Regulation 10 of the Rules promulgated by the Tennessee Department of Finance and Taxation, which Regulation prohibited quantity discounts, and the restoration thereof would have had substantially the same effect as the Fair Trade Agreement struck down by the decision of the United States Supreme Court.

"Plaintiff further alleges that this combination to prevent quantity discounts in Shelby County was a violation of the federal anti-trust statutes mentioned in the complaint."

(Second Amendment) "That each wholesaler purchased brands from certain distillers from states other than the State of Tennessee. That when a wholesaler was boycotted, his purchasing power was affected thereby retarding the purchase of his brands from out of State."

Rule 15(a), Federal Rules of Civil Procedure, provides that leave to file amendments to pleadings "shall be freely given when justice so requires." Rule 15(b) further evinces the purpose of the rule makers to have been that material amendments shall be freely allowed to accomplish the presentation of an action on its merits. Under this rule, certain amendments may be made, "even after judgment".

In Sinclair Refining Co. v. Bennett, 6 Cir., 123 F.2d 884, 886, this court, pursuant to its interpretation of Rule 15(b), held that a trial court properly allowed the plaintiff in an action for damages to amend her declaration *at the close of the evidence,* to conform to her view of the evidence as it affected the plea of the statute of limitations. We expressed the opinion that the amendment was properly allowed in the interest of justice. See also Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, 871, stating the principle that, under Civil Procedure Rule 15(a), the liberal allowance of amendment of pleadings is a "complement to restriction of objections for substance and form."

In International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 121 F.2d 561, 563, the Court of Appeals pointed out that the tendency of the federal courts has been consistently toward greater liberality in the allowance of amendment to pleadings, and said: "The Supreme Court of the United States has fixed the limits of permissible amendment with increasing liberality and has ruled that a change of the legal theory of the action is no longer accepted as a test of the propriety of a proposed amendment. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 68, 53 S.Ct. 278, 77 L.Ed. 619. Rule 15 of the Rules of Civil Procedure, 28 U.S.C.A., following section 723(c), expresses the same liberality with respect to the amendment of pleadings." For illustration of the extent to which has been carried the liberality to be accorded in the matter of amendment of complaints under Rule 15 of the Federal Rules of Civil Procedure, see the opinion of the Supreme Court in Tiller v. Atlantic Coast Line Railroad Co., 323 U.S. 574, 580, 581, 65 S.Ct. 421, 89 L.Ed. 465.

The Court of Appeals for the Second Circuit, in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, cautioned trial courts concerning the sustaining of motions for summary judgments in the following language: "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose

for which courts have been established. Denial of a trial on disputed facts is worse than delay. Cf. Arenas v. United States, 322 U.S. 419, 429, 433, 64 S.Ct. 1090, 88 L.Ed. 1363. The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered." [Citing numerous federal decisions, including Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 624, 64 S. Ct. 724, 88 L.Ed. 967.]

This court, in Rogers v. Girard Trust Co., 6 Cir., 159 F.2d 239, 242, reversed a summary judgment for a defendant entered in the district court, for the reason that it was thought that a genuine issue as to material facts was presented and that, in accordance with the judgment of the Supreme Court in Sartor v. Arkansas Natural Gas Corp., supra, summary judgment is authorized only "where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."

Again, in Begnaud v. White, 6 Cir., 170 F.2d 323, 327, this court reversed a summary judgment for defendants and remanded the case for trial on the merits, where a fact issue was considered to be presented. The opinion stated: "The authorities indicate that the trial judge should be slow in passing upon a motion for summary judgment which would deprive a party of his right to a trial by jury where there is a reasonable indication that a material fact is in dispute. Compare Sartor v. Arkansas Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, where the affidavits of eight witnesses on behalf of the defendant were, under the circumstances in that case, insufficient to authorize the Court to sustain defendant's motion for summary judgment."

Counsel for appellees stress the opinion of the Court of Appeals for the Ninth Circuit in Suckow Borax Mines Consol. v. Borax Consolidated, 185 F.2d 196, 209, wherein summary judgment for defendants was upheld in a suit for treble damages brought under the anti-trust laws of the United States. We think the case is clearly distinguishable, in that there no genuine issue of fact was presented for trial, nor did the appellants submit a copy of a proposed third amendment, nor did they suggest to the trial judge or to the appellate court "the nature or text of the amendment which they desired to make", nor "did they indicate in what respect this amendment would or could overcome appellees' defenses." The Court of Appeals was plainly right in the circumstances of that case in finding no abuse of discretion in the denial by the district judge of the motion of appellants to amend their complaint for the third time. We think, however, that the authority bears no real analogy to the case at bar.

It would seem that the original complaint, charging broadly, as it did, that the illegal combination and conspiracy by the defendants in restraint of trade in contravention of the anti-trust laws of the United States "affected interstate commerce", would be adequate pleading to entitle appellant to a trial of his case upon its merits. We find that nothing in the pre-trial deposition of appellant, taken at the instance of counsel for appellees, gainsays the right of appellant to show that transactions of the defendants complained of did affect interstate commerce. But, if the original complaint should be considered inadequate to permit appellant to proceed to trial on the merits, certainly the proffered amendments of the complaint by appellant, which we have held should have been allowed, allege facts which present a situation involving interstate commerce.

The language of the Supreme Court in United States v. Women's Sportswear Manufacturers Association, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805, would appear to be directly applicable: "The trial court appears to have dismissed the case chiefly on the ground that the accused Association and its members were not themselves engaged in interstate commerce. This may or may not be the nature of their operation considered alone, but it does not matter. Restraints, to be effective, do not have to be applied all along the line of movement of interstate commerce. The source of the restraint may be intrastate, as the making of a contract or combination usually is; the

application of the restraint may be intrastate, as it often is; but neither matters if the necessary effect is to stifle or restrain commerce among the states. If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." Holding that the intent and effect of the agreement there considered was substantially to restrict competition, prices and markets in violation of section 1 of the Sherman Act, the Supreme Court reversed the dismissal by the district court of an injunction suit against violations of that Act.

The decision and opinion of the Supreme Court in United States v. Frankfort Distilleries, 324 U.S. 293, 298, 299, 65 S.Ct. 661, 664, 89 L.Ed. 951, seems relevant to the case at bar. There, respondents, who were respectively producers, wholesalers, and retailers of alcoholic beverages, were charged with conspiring in violation of the Sherman Act to raise, fix and maintain retail prices of liquor in Colorado by raising, fixing and stabilizing retail mark-ups and margins of profit. It was held that the fact that the ultimate object of the conspiracy was to fix and maintain local retail prices did not, of itself, remove the conspiracy from the scope of the Sherman Act. It was pointed out that retail outlets have ordinarily been the object of illegal price maintenance; but that, whatever the ultimate object of the conspiracy might be, the means adopted for its accomplishment reached beyond the boundaries of Colorado. The coercive power of the combination was said to have been used to compel the producers of alcoholic beverages outside Colorado to enter into price maintenance contracts. The opinion asserted: "Local purchasing power was the weapon used to force producers making interstate sales to fix prices against their will. It may be true, as has been argued, that under Colorado law, retailers are prohibited from buying from out-of-state producers, but this fact has no relevancy. The power of retailers to coerce out-of-state producers can be just as effectively exercised through pressure brought to bear upon wholesalers as though the retailers brought such pressure to bear directly upon the producers. And combina-

tions to restrain, by a boycott of those engaged in interstate commerce, through such indirect coercion is prohibited by the Sherman Act. * * * Granting the state's full authority to determine the conditions upon which liquor can come into its territory and what will be done with it after it gets there, it does not follow from that fact that the United States is wholly without power to regulate the conduct of those who engage in interstate trade outside the jurisdiction of the State of Colorado." The opinion writer added: "The Sherman Act is not being enforced in this case in such manner as to conflict with the law of Colorado. Those combinations which the Sherman Act makes illegal as to producers, wholesalers and retailers are expressly exempted from the scope of the Fair Trade Act of Colorado, and thus have no legal sanction under state law either. We therefore do not have here a case in which the Sherman Act is applied to defeat the policy of the state. That would raise questions of moment which need not be decided until they are presented."

The situation in Tennessee seems similar to that which existed in Colorado. By acting together and boycotting wholesalers who alone have the lawful right to buy from distillers, the retail liquor dealers in Memphis have it within their power to affect interstate commerce in liquor, by pressure through the wholesalers on out-of-state distillers. It being immaterial whether the out-of-state distillers were parties to a conspiracy to fix prices and prevent quantity discounts in Tennessee, a boycott of the wholesalers by the retailers could well prevent purchases by the wholesalers from out-of-state distillers, who can lawfully sell *only* to wholesalers licensed in Tennessee.

We shall not undertake to discuss at length the rather recent and important opinion of the Supreme Court in Schwegmann Brothers v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035. The Supreme Court there pointed out that the fixing of minimum prices like other types of price-fixing is illegal *per se* (Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219), and that the fact that a state authorizes price

fixing does not give immunity to the scheme adopted where Congress has not approved. The holding was that distributors of liquor in interstate commerce, who had agreements with Louisiana retailers fixing minimum retail prices for their products, were not entitled under the Miller-Tydings Act to enjoin a New Orleans retailer from selling the distributor's products at less than the minimum prices fixed by their schedules where the particular retailer had refused to sign a price-fixing contract with the distributors and had sold their products at cut-rate prices, even though the law of Louisiana authorized enforcement of price fixing, not only against parties to the price-fixing contract, but also against non-signers.

In Kiefer-Stewart Co. v. Seagram & Sons, supra, an action relating to price fixing of liquor brought for treble damages under the Sherman Act, the Supreme Court reaffirmed its language used in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129: "Under the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se*." A judgment on the verdict of a jury for damages in favor of the complainant was affirmed.

The Court of Appeals for the Third Circuit, in Sunbeam Corp. v. Civil Service Employees' Co-operative Ass'n, 192 F.2d 572, followed and applied the decision of the Supreme Court in the Schwegmann Brothers case, supra. It was held that a price-fixing scheme of an interstate manufacturer, by which retailers signed price-fixing contracts binding buyers to sell at not less than the prices stated in the schedules of the manufacturers, was unenforceable in Pennsylvania as against a non-signer who was engaged in intrastate commerce only, even though the Pennsylvania statute enforced price fixing, not only against parties to a contract, but also against non-signers.

The record reveals that Memphis wholesalers purchased almost their entire supply of whiskey from out-of-state distilleries, there being only one distiller lawfully making whiskey in Tennessee. Under the laws of that state, a retailer must purchase his liquor only from a licensed wholesaler. The Supreme Court of Tennessee, in Frankfort Distillers Corporation v. Liberto, 190 Tenn. 478, 230 S.W.2d 971, held that where the manufacturer of liquor, protected by trade-mark brands and trade-names, executed contracts under the Fair Trade Act of Tennessee, Chap. 58, Public Acts of Tennessee of 1937, with retail dealers covering prices, such manufacturer was entitled to injunctive relief against non-contracting dealers who were selling branded products at prices below those fixed in the price contracts. This decision, however, was announced prior to the decision of the Supreme Court in the Schwegmann Brothers case, supra, which held, as has been shown, that a non-signer provision in a Louisiana law very similar to that in the Tennessee statute was void as violative of the Sherman Anti-Trust Act.

There is considerable force in the argument of appellant that, from the record, it may be logically inferred that appellees by their combination were attempting to restore the artificial price level for retail liquor sales which prevailed before such price-fixing agreements were held invalid in the Schwegmann case; and that the mere fact that the whiskey sold to the retailers had been stored in wholesale warehouses before such sales would not effectuate immunity for the price-fixing scheme from the coverage of the anti-trust statutes of the United States.

As was said in United States v. Wrightwood Dairy Co., 315 U.S. 110, 121, 62 S.Ct. 523, 527, 86 L.Ed. 726, the federal power to regulate intrastate transactions does not depend upon the fortuitous circumstance that a particular person conducting intrastate activities is, or is not, also engaged in interstate commerce; but that it "is the effect upon interstate commerce or upon the exercise of the power to regulate it, not the source of the injury which is a criterion of Congressional power." It was held that the national power to regulate the price of milk moving between states into a marketing area included authority to regulate the price of milk intrastate, the sale of which, in competition with the sale of inter-

state milk, affected adversely the price structure and federal regulation of the latter.

In Universal Milk Bottle Service v. United States, 6 Cir., 188 F.2d 959, 964, this court affirmed the judgment of District Judge Nevin and approved in material aspects the reasoning of his carefully considered and scholarly opinion. Our holding was that, on the facts of the case, the interstate transportation of milk into Ohio was affected even though the transportation in interstate commerce ended upon the arrival of the milk in Cincinnati. We said: "It is not necessary in this case to establish the 'stream of commerce' doctrine. As pointed out by the District Judge, the case can be bottomed on the substantial economic effect on interstate commerce of an act wholly intrastate. United States v. Women's Sportswear, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805. In such cases the point where interstate commerce ceases is not involved, if in fact interstate commerce is substantially affected. [Citing authorities.]"

The opinion in Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196, recognizes that though quantity discounts, if not discriminatory among buyers within the same classification and not tending to stifle competition and create monopoly, are permissible, they are subject to the entry by the Federal Trade Commission of a cease and desist order if they are not in conformity with the stated standards against discrimination and monopoly. Mr. Justice Rutledge in Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328, indulged in a helpful and comprehensive discussion of the Supreme Court decisions in relation to the interstate commerce clause and the Sherman Anti-Trust Act.

As we have indicated, appellant should be allowed to incorporate his two proffered amendments into his complaint and to proceed to the trial of his alleged cause of action upon its merits.

The judgment of the District Court is reversed and the case is remanded for trial in conformity with this opinion.