The **TIMKEN ROLLER BEARING COMPANY**, Petitioner,

v.

**FEDERAL TRADE COMMISSION**,
Respondent.

No. 14526.

United States Court of Appeals
Sixth Circuit.

Feb. 16, 1962.

John G. Ketterer, Day, Cope, Ketterer, Raley & Wright, Canton, Ohio, for petitioner.

Alvin L. Berman, Washington, D. C., James McI. Henderson, General Counsel, J. B. Truly, Asst. General Counsel, Thomas F. Howder, Attorneys, Federal Trade Commission, Washington, D. C., on brief, for respondent.

Before MILLER, Chief Judge, MARTIN, Circuit Judge, and DARR, District Judge.

MARTIN, Circuit Judge.

The Timken Roller Bearing Company, petitioner, seeks review of an order issued against it by the Federal Trade Commission, Respondent, ordering it to cease and desist from certain practices alleged to be in violation of Section 3 of the Clayton Act (15 U.S.C.A. § 14).

This section, in pertinent part, provides: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods * * * for * * * resale * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller, where the effect * * * may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The Commission does not charge that Timken entered into any contract in writing, or agreement, contrary to the mandate of this statute; but it accuses the petitioner of violating Section 3 by following a consistent policy of "exclusive dealing." Specifically, the last part of Paragraph Six of the Complaint charges: "Respondent [petitioner here] has followed a consistent policy of requiring the distributors and jobbers to whom it sells its tapered roller bearings for resale, to discontinue handling like or similar products supplied or sold by any competitor or competitors of respondent and not to handle any such products except those sold to such distributors and jobbers by the respondent."

In support of the accusations contained in the Complaint, the Commission introduced in evidence numerous documents purporting to prove Timken's consistent policy of exclusive dealing. The majority of these documents consisted of salesmen's reports to the Timken home office, recommending the taking on of a new account or the canceling of an old one. In our view, the Commission's whole case rests upon the fact that, in these reports, the salesmen either recommended Timken's taking on a new account because it would be "loyal" to that company, or suggested that an old account be cancelled because the dealer was stocking the products of a Timken competitor.

At the close of the Commission's case, Timken moved to dismiss the Complaint on the grounds that the Commission had failed to prove its case. The Hearing Examiner granted the motion and ordered the Complaint dismissed. An appeal was taken from this initial decision to the Federal Trade Commission. That tribunal vacated the order of the Hearing Examiner and remanded the case for further proceedings.

Further hearings were held at which Timken introduced evidence to rebut the charges in the Complaint and to explain the circumstances surrounding each and every one of the documents relied upon by the Commission. In the main, this evidence went to show that by "loyalty" Timken meant that its dealers should devote themselves primarily to the resale of Timken bearings; and that there was no hard and fast policy on the part of the company to instruct its dealers not to stock bearings manufactured by a competitor. The evidence also showed that in every case where a dealer's account was cancelled, that dealer had bought no Timken bearings, or almost none, for a long period before the cancellation. Finally, the evidence showed the custom in the bearing resale industry to be the stocking of only one brand of bearings, because of the prohibitive inventory cost of carrying more than one brand of the same bearing in stock.

In rebuttal, the Commission introduced one dealer who testified that Timken had cancelled him out because he dealt in the products of a competitor, and another witness who testified that it was not the general custom to stock only one brand of bearings.

At the close of all the evidence, the Hearing Examiner made a second initial decision, in which he again dismissed the Complaint on the grounds that it had not been sustained. Another appeal was taken to the Federal Trade Commission; and, once more, the Commission set aside the decision of the Hearing Examiner and entered an order against the Timken Company, directing it to cease and desist from practices of which complaint was made. Petitioner seeks our review of that order.

The Commission's findings as to the facts are conclusive on review, if they are supported by substantial evidence in the record considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Section 11(c) of the Clayton Act, 15 U.S.C.A. § 21(c).

The principal Findings of Fact upon which the cease and desist order is based are those numbered Five and Six: "(5) * * * that respondent [Timken] has followed a consistent policy of requiring said purchasers to discontinue handling similar products sold by respondent's competitors * * *;" and "(6) * * that respondent [Timken] has failed to weaken the probative value of the documentary evidence adduced in support of the complaint."

Even under our limited scope of review, we are of opinion that these Findings of the Commission, and the order based upon them, must be set aside as not supported by substantial evidence on the record considered as a whole. Only one witness testified that he had been cancelled out as a Timken jobber because he had dealt also in bearings manufactured by a competitor, while thirty-seven Timken distributors and jobbers testified that they not only felt free to deal in competitive bearings, but had actually done so to some extent.

Moreover, Timken introduced evidence showing that in each and every one of the cancellation instances referred to in the documents relied upon by the Commission, the dealer in question had brought about his own cancellation by either failing to purchase any Timken bearings for a long period of time, or by requesting that he be cancelled.

Finally, numerous Timken officials testified that their company had no such exclusive dealing policy, and that its dealers did handle competitive bearings with the full knowledge and consent of the com-

pany, so long as their primary effort was devoted to the Timken line. It is important to note here that the Hearing Examiner, who saw and heard the witnesses, stated that he believed all who testified on behalf of Timken.

Even if the testimony of the single jobber who testified that he was cancelled by Timken for dealing in competitive bearings be true, this isolated instance does not constitute substantial evidence of a consistent policy of exclusive dealing such as would justify entry of the cease and desist order here under review. Nor can the documents alone be substantial evidence of such a policy, inasmuch as, even if these reports show that Timken cancelled dealers' accounts because they were dealing in competitive bearings, this alone is not illegal. Perhaps the rule has best been stated for our purposes in the following language: "The anti-trust laws do not prohibit a manufacturer or distributor from selecting dealers who will devote their time and energies to selling the former's products and a manufacturer is not compelled to retain dealers having divided loyalties adverse to the interests of the said manufacturer or distributor." McElhenny Co., Inc. v. Western Auto Supply Co., 167 F. Supp. 949, at page 954, affirmed 269 F.2d 332 (C.A. 4).

■■ A seller has the right to select his own customers. This right is protected by the Clayton Act, itself. 15 U.S. C.A., § 13. The right has ben recognized by the authorities, even where it was not expressly provided for by the statute. United States v. Colgate & Company, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992; Times-Picayune Publishing Company v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Naifeh v. Ronson Art Metal Works, 218 F.2d 202 (C.A. 10). To uphold the order entered by the Commission in this case would be, in effect, to destroy this right. Here there has been proved no "condition, agreement or understanding" such as has been made unlawful by the Act. Nor has there been proved any consistent policy of exclusive dealing as was alleged in the Complaint.

All that has been proved here is that a seller has exercised its right to select the people to whom it will sell.

We are of opinion, therefore, that the cease and desist order entered by the Commission against the petitioner, Timken, should be set aside, inasmuch as it is not supported by substantial evidence in the record considered as a whole.

The Complaint against Timken Roller Bearing Company is ordered to be dismissed.