**WALKER DISTRIBUTING COMPANY et al., Appellants,**

v.

**LUCKY LAGER BREWING COMPANY, Appellee.**

No. 18222.

United States Court of Appeals
Ninth Circuit.

Sept. 6, 1963.

Kramer & Walker, and Lloyd J. Walker, Twin Falls, Idaho, for appellants.

McCutchen, Doyle, Brown & Enersen, and William W. Schwarzer, San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This case presents the question of the sufficiency of counts two and three of a second amended counterclaim, i. e., does either of those counts state a claim upon

which relief can be granted? (F.R.Civ. P. 12(b) (6)) The trial court ruled that they do not, having similarly ruled upon similar counts which appeared for the first time in an amended counterclaim. Thereafter, the counterclaimants, appellants here, made a motion for final judgment in which they stated:

"That the counter-defendants [sic] herein do not desire to and cannot further amend the second amended complaint [sic]. That all the facts that can now be pleaded are now before the Court and further amendment is undesirable and impossible."

The court granted this motion and entered a final judgment against appellants. In that judgment it dismissed the entire counterclaim, but the only error asserted here relates to counts two and three. Appellants rely upon sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and section 3 of the Clayton Act (15 U.S.C. § 14. We are reversing the judgment in part.

The action began as a diversity suit by appellee Lucky Lager Brewing Company (Lucky) against Walker Distributing Company, Inc., (Walker) and T. C. Walker and his wife, Rose, who were its stockholders and had guaranteed its obligations to Lucky. The claim was for $17,763.02 for beer purchased by Walker from Lucky. Summary judgment was entered for Lucky based upon admissions that the money was owing, so that only appellants' counterclaim remains to be disposed of.

■ The only question now before us is whether, on the face of the counterclaim, a claim is stated upon which relief can be granted. We must construe the pleading in the manner most favorable to appellants and must bear in mind the policy that, unless there is no doubt as to the result, cases should be disposed of upon their merits. (See White Motor Co. v. United States, 1963, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738; Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816, 826–827, 831).

■ Although there are some decisions that appear to take a contrary position, we are of the opinion that there are no special rules of pleading in antitrust cases. Rule 8, F.R.Civ.P., is applicable here as in any other case. Nowhere in the Rules is there any contrary indication. The fact that Rule 9(b) requires particularity of statement of circumstances constituting fraud or mistake indicates that such particularity is not required in other cases, including antitrust cases. (See Thomason v. Hospital T.V. Rentals, Inc., 8 Cir., 1959, 272 F.2d 263; Niagara of Buffalo, Inc. v. Niagara Mfg. & Distrib. Corp., 2 Cir., 1958, 262 F.2d 106; Central Ice Cream Co. v. Golden Rod Ice Cream Co., 7 Cir., 1958, 257 F.2d 417; Sandidge v. Rogers, 7 Cir., 1958, 256 F.2d 269, 276; New Home Appliance Center, Inc. v. Thompson, 10 Cir., 1957, 250 F.2d 881; Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319, 322–326; Lloyd v. United Liquors Corp., 6 Cir., 1953, 203 F.2d 789; Package Closure Corp. v. Sealright Co., 2 Cir., 1944, 141 F.2d 972; Louisiana Farmers' Protective Union v. Great Atl. & Pac. Tea Co., 8 Cir., 1942, 131 F.2d 419, 422; F. Freund, The Pleading and Pre-Trial of an Anti-trust Claim, 1961, 46 Cornell L.Q. 555, 558.)

■ In several cases, the Supreme Court has indicated that we should be liberal in construing antitrust complaints. (See Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 1961, 364 U.S. 656, 659–660, 81 S.Ct. 365, 5 L.Ed. 2d 358 (per curiam); Radovich v. National Football League, 1957, 352 U.S. 445, 453–454, 77 S.Ct. 390, 1 L.Ed.2d 456; United States v. Employing Plasterers' Ass'n, 1954, 347 U.S. 186, 188–189, 74 S.Ct. 452, 98 L.Ed. 618.) In the Employing Plasterers case, the Court made it clear that, "whether these charges be called 'allegations of fact' or 'mere conclusions of the pleader,' * * * they must be taken into account in deciding" whether a claim for relief is stated. (Id. at 188, 74 S.Ct. at 453–454, 98 L.Ed. 618). Indeed, as we understand it, one purpose of Rule 8 was

to get away from the highly technical distinction between statements of fact and conclusions of law, and other similar technicalities, that often made a party's success depend upon the skill of his counsel as a pleader rather than upon the merits of his case. The official forms, and rules 1 and 84, confirm this view. Most of the forms contain more "legal conclusions" than they do "facts."

This court is not committed to a contrary view. In Bolick-Gillman Co. v. Continental Baking Co., 9 Cir., 1960, 278 F.2d 649, we reversed a dismissal for failure to state a claim under the antitrust laws because "[i]t cannot be said * * * that it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Id. at 650)

We think that the language of certain decisions goes too far in requiring details in an antitrust complaint, and insofar as it does, we decline to follow. Among such cases are Crummer Co. v. Du Pont, 5 Cir., 1955, 223 F.2d 238; Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 1954, 214 F.2d 891; Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911; Feddersen Motors, Inc. v. Ward, 10 Cir., 1950, 180 F.2d 519; Black & Yates, Inc. v. Mahogany Ass'n, 3 Cir., 1941, 129 F.2d 227.

The sketchy and disconnected nature of appellants' allegations, when coupled with their written judicial admissions in the trial court that they cannot further amend, may make us suspect that appellants may be unable to prove their case. It may well turn out, as Lucky suggests, that the counterclaim is without merit, and is an unjustified afterthought, filed in an effort to avoid paying a wholly legitimate commercial debt. There are ways by which appellee can justify these suspicions. (See Sidebotham v. Robison, supra, at 826–827) But the existence of doubt as to a party's ability to prove his case is not a reason for dismissing for failure to state a claim.

Nor are we impressed with Lucky's suggestion that "this is not a pleading case" because appellants confess that they cannot further amend. No authority is cited for this notion, nor can we find any. It is still true that, if the counterclaim states a claim, a dismissal under Rule 12(b) (6) is improper. We do think, however, that in construing the counterclaim we are entitled to take appellants at their word, and need not conjure up ways in which they might amend if permitted to do so.

Bearing these considerations in mind, we now consider the pleading. The second amended counterclaim is by the three defendants, and the pertinent counts contain substantially the following allegations:

### Count Two

Paragraphs I to IV:

Lucky is a California corporation and is engaged in brewing and selling "Lucky Lager" beer. Its beer is sold and distributed in interstate commerce in at least eleven western states, including Idaho, and it is "one of the largest manufacturers of beer products for sale throughout the said territory of eleven states." It sells through wholesale distributors who are independent contractors, operating under a standard printed contract, a copy of which is attached to the counterclaim. The contract contains a representation that Walker is adequately prepared and equipped to perform the sale and distribution of Lucky's products and an agreement by Walker that Lucky shall not be liable during its term or upon its termination for any expenditure or act done for the purpose of enabling Walker to perform. Lucky agrees to sell to Walker the latter's requirements of beer and Walker agrees to purchase, distribute and sell Lucky's products, "in accordance with the terms and conditions of this agreement and the rules and regulations and sales policies now or hereafter prescribed by [Lucky] for the distribution and sale of its products." The territory of Walker is described as certain named counties in Idaho, and the agreement then states: "[Walker] understands that said terri-

tory is not exclusive but that [Lucky] may sell said products to such other distributors, jobbers, wholesalers, retailers, buying associations, and/or chain organizations operating in said territory and at such prices as [Lucky] may from time to time deem advisable." The contract states that Walker is an independent contractor and contains other provisions relating to the operation of Walker's business not here material. It then provides for termination by either party for breach by the other "without advance notice" and also by either party without cause upon thirty days advance notice. In the event of termination, Walker agrees to sell to Lucky its entire inventory of Lucky's products. It is alleged that the contract does not require Walker to handle Lucky's products exclusively, and the contract confirms this allegation. The contract, however, does provide: "[Walker] shall use due diligence to secure maximum sales of the products of [Lucky] in said territory during the term of this agreement. The failure of [Walker] properly and vigorously to push the sale of products of [Lucky] shall be deemed a violation of this agreement, [Lucky] to be the sole judge as to whether this condition is being performed."

Paragraphs V and VI:

Walker became a distributor in 1952, its latest distributorship agreement being dated May 28, 1958. Beginning in 1956, Walker also distributed Coors beer. In 1958, Lucky demanded that Walker "dispose of Coors or else be terminated as the Lucky Lager distributor," and Lucky refused to permit Walker to sell any other brand of beer which Lucky

considered competitive with the "Lucky Lager" brand. There follows this allegation:

"A combination and conspiracy between [Lucky] * * * and other of its distributors was formed to threaten defendant with the reprisal of termination if it did not become exclusively a distributor of Lucky Lager Beer. That [Lucky] * * * acted individually and in combination with other of its distributors."

The combination and conspiracy had the following purposes:

"(a) To arbitrarily, unlawfully, unreasonably and knowingly prevent, surpress [sic] and eliminate competition between and among the plaintiff herein and other beer manufacturers in the State of Idaho. (b) To arbitrarily, unlawfully, unreasonably and knowingly prevent, surpress [sic] and eliminate competition to as great an extent as possible in the sale of Lucky Lager Beer shipped in interstate commerce as aforesaid into the State of Idaho. (c) To cause the defendant Walker Distributing Company, Inc., to be unable to distribute competitive beers in the State of Idaho by bringing about a termination of the distributorship contract then in existence between plaintiff and Walker Distributing Company, Inc. (d) To arbitrarily, unlawfully, unreasonably and knowingly prevent all other Lucky Lager beer distributors from handling competitive beers."

Pursuant to the conspiracy, the "counter defendants"[1] caused Lucky to

---

1. The counterclaim names Lucky and two individuals, W. A. Godfrey and Delbert Provant, as counter-defendants. It appears from count one that Provant is sales representative of Lucky in southern Idaho, and that Godfrey owns a corporation which is a Lucky distributor, and which became the distributor of Lucky's beer in Walker's territory after Lucky cancelled Walker's franchise. These facts are not realleged in counts two and three, the only reference to Godfrey and Provant being the use of the plural, "counter-de-

fendants," in the allegation discussed in the text. We think that the addition of their names at this point adds nothing to the case. An agreement between Lucky and Godfrey, abetted by Provant, to get the distributorship for Godfrey might be a conspiracy to induce breach of contract; without more, it would not be a conspiracy to violate the antitrust laws (see Ace Beer Distrib., Inc. v. Kohn, Inc., 6 Cir., 1963, 318 F.2d 283). If, however, these men were shown to be parties to a conspiracy with other distributors to thwart

**6**

tell Walker that it could either distribute Lucky beer exclusively and not distribute any other competitive beer, or lose its distributorship, and Walker refused to comply and Lucky did terminate its distributorship.

Paragraphs VII-VIII:

Lucky's action is a part of a general company policy, and it similarly terminated the distributorship of one Winkle, a Lucky distributor in Richfield, Utah, and it demanded that another distributor, one Elegante, in Provo, Utah, dispose of its Coors distribution system, and Elegante did so.

### Count Three

Count three does not charge conspiracy. It repeats paragraphs I through IV of count two, and the allegations as to the 1958 contract. It alleges that in 1958 Lucky demanded that Walker dispose of its distribution of Coors beer and exclusively distribute Lucky's beer and that other Lucky distributors were not permitted to distribute competitive brands of beer. It also states that in 1960 Lucky threatened to terminate Walker's distributorship if Walker did not meet its demands and did not enter into a secret oral agreement not to distribute competitive beers, that Walker refused, and that, in reprisal, Lucky terminated Walker's distributorship. It then repeats paragraphs VII and VIII of count two.

The final paragraph of this count reads:

"That the purpose and object of [Lucky's] course of action, among other things, was to place a restraint on the free flow of interstate commerce and to substantially reduce competition in the sale of beer

within the beer market encompassed by the sale of Lucky Lager Beer."

Single damages of $110,000 are claimed in each count.

### Count Two States A Claim Under Section 1 Of The Sherman Act.

Lucky's basic contention is that the counterclaim shows only "a manufacturer's refusal to deal with a distributor" —a "termination of a distributor who handles products which the manufacturer deems incompatible." Its principal reliance is upon United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992. We need not pass upon the much mooted question as to whether the holding in that case is still alive. We note only that there is a difference of opinion about it among at least some of the present Justices of the Supreme Court, as appears from the opinions in United States v. Parke, Davis & Co., 1960, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505.[2] The majority opinion in Parke, Davis says of Colgate that it is limited "to a holding that when the only act specified in the indictment amounted to saying that the trader had exercised his right to determine those with whom he would deal, and to announce the circumstances under which he would refuse to sell, no Sherman Act violation was made out." It further states that the Court has "plainly fashioned its [Colgate's] dimensions as meaning no more than that a simple refusal to sell to customers who will not resell at prices suggested by the seller is permissible under the Sherman Act." Lucky's reliance upon Colgate is misplaced.

■■ We think that count two states a claim in favor of Walker under section 1 of the Sherman Act. Essentially, the allegation is that Walker's distributor-

---

the antitrust laws, they might be individually liable, a point we do not deem it necessary to decide, particularly as it relates to Provant. (Cf. 15 U.S.C. § 24, and see footnote 3, infra.)

2. Five of the present members of the Supreme Court concurred in an opinion in which Colgate is distinguished and limit-

ed; one present member saw no need to question its continuing validity, "even by innuendo"; three justices, only one of whom is now on the Court, felt that the Court "has done no less than send to its demise the Colgate doctrine * * *." We feel obliged to assume that the report of demise is premature.

ship was terminated because it handled a rival beer, that this was done pursuant to a conspiracy between Lucky and some of its distributors, and that a purpose of the conspiracy was to unreasonably restrain competition in the sale of Lucky's beer and of other beers in Idaho. This brings the case within the rule of Parke, Davis, supra. It is true that Parke, Davis involved price fixing, while here the conspiracy was to prevent appellants from buying and selling a rival beer. But we think the difference not determinative. Group boycotts are just as illegal under the Sherman Act as group price fixing. (Klor's, Inc. v. Broadway-Hale Stores, Inc., 1959, 359 U.S. 207, 212, 79 S.Ct. 705, 3 L.Ed.2d 741)[3]. We realize that the facts of Klor's are different, in that there a number of manufacturers were charged with boycotting a single distributor by not selling it their products, while here a manufacturer and its distributors are charged with combining to exclude rival products from a part of the market by requiring distributors, including Walker, not to deal in those products. But the difference, while significant, is not, to us, controlling.

Essentially, what is charged is a conspiracy between Lucky and some of its other distributors, the purpose of which is that none of them shall carry Coors or any other competitive beers. This conspiracy is directed primarily at the makers of those beers, of whom Walker is not one. But if a conspiracy to establish such a boycott of those beers is illegal, as we think it may be, and if one of its intended and actual effects is to cut off a supply of Lucky's beer to a distributor who does not join the conspiracy, we can see no reason why that distributor does not have a valid claim for relief.

██ It is clear from Parke, Davis, supra, that a manufacturer who conspires with others to accomplish what he could lawfully accomplish when acting alone, may violate section 1 of the Sherman

Act. This is obviously correct, as section 1 does not outlaw all restraints of trade, but only a "contract, combination * * * or conspiracy, in restraint of trade." Thus, it is not an answer to rely upon Colgate as appellees do here.

It is also true that both Parke, Davis, supra, and Klor's, supra, involved conduct that has been held to be illegal *per se*. We know of no case that holds that contracts between a manufacturer and distributors of his product whereby the latter agree to act as exclusive distributors, that is, to handle his product alone, are illegal *per se*. Most of the cases that have considered the question hold or say that such a contract is not, without more, illegal either under the Sherman Act or the Clayton Act. (See Ace Beer Distrib., Inc. v. Kohn, Inc., 6 Cir., 1963, 318 F.2d 283, 286–287 (Sherman and Clayton Acts); Timken Roller Bearing Co. v. F.T.C., 6 Cir., 1962, 299 F.2d 839 (Clayton Act); Packard Motor Car Co. v. Webster Motor Car Co., 1957, 100 U.S. App.D.C. 161, 243 F.2d 418, 420 (Sherman Act); Schwing Motor Co. v. Hudson Sales Corp., 4 Cir., 1956, 239 F.2d 176 (Sherman and Clayton Acts); Leo J. Meyberg Co. v. Eureka Williams Corp., 9 Cir., 1954, 215 F.2d 100 (Clayton Act); Nelson Radio & Supply Co., v. Motorola, Inc., supra, 200 F.2d at 914 (Sherman and Clayton Acts; no conspiracy shown). Compare McElhenney Co. v. Western Auto Supply Co., 4 Cir., 1959, 269 F.2d 332, 337–338 (Sherman and Clayton Acts))

It may be, however, that such contracts, particularly when there is a "horizontal" understanding among the distributors as well as a "vertical" one between the manufacturer and each distributor, can be so anti-competitive, in purpose or effect, or both, as to be an unreasonable restraint of trade. Neither we nor the trial court can know, at this stage, whether that is so as a matter of law. See White Motor Co., supra,

---

3. Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, does not help Lucky. Here, Lucky is charged with conspiring with its other distributors.

Nelson Radio would be applicable if the only conspirators were alleged to be Lucky and its agent, Provant.

which involved geographic restrictions and restrictions as to customers of distributors. In that case a majority of the court squarely held, at least that the White Motor Co. should have an opportunity to show that its arrangements with its distributors, other than price fixing, were not an unreasonable restraint of trade, and, we think, actually held that the plaintiff must show that they are an unreasonable restraint. We find no indication in White Motor Co. that the normal burden of proof is to be shifted in that or analogous cases not involving *per se* violations. And in view of the cases cited above, we certainly do not think that the burden of proof should be shifted from Walker in this case.

■ We cannot say that the conspiracy or its objectives are not sufficiently pleaded here. Count two does allege a conspiracy between Lucky "and other of its distributors." This would be both "horizontal" and "vertical." The "other" distributors are not named, nor are their numbers or locations or other similar facts stated. While some cases seem to require such allegations, we do not think that they are required. A plaintiff need not sue all conspirators; he may choose to sue but one. (See Karseal Corp. v. Richfield Oil Corp., 9 Cir., 1955, 221 F. 2d 358). Even in a criminal antitrust case, the government need not name the conspirators not sued, nor state their number, in the indictment. (United States v. Gasoline Retailers Ass'n. Inc., 7 Cir., 1961, 285 F.2d 688) The counterclaim does show how the conspiracy affected Walker.

To require that these matters be pleaded would not, in our judgment, materially assist the trial courts in getting rid of strike suits at the pleading stage. We realize that a creditor who has a large and legitimate claim can be harassed into compromising or even surrendering it by the threat of treble damages, the sometimes enormous burdens of discovery, and the prospect of long and costly litigation. We have no sympathy with such tactics; the difficulty is that technical rules of pleading will not defeat them. We do

not, of course, mean to say that the claims here involved are of that character, although appellees assert that they are. One cannot know about such matters by a mere examination of pleadings.

■ We do not hold that the conspiracy here charged is illegal *per se*. We do hold that it may be illegal, if shown to amount to an unreasonable restraint of trade. We also hold that that question ought not to be decided on the face of a pleading which does allege a conspiracy, and does allege an unreasonably anti-competitive purpose, and does allege a direct effect upon Walker. We emphasize that this is a pleading case, and nothing more.

### Count Three Does Not State A Claim Under Section 1 Of The Sherman Act.

■ Count three does not charge a contract, combination or conspiracy in restraint of trade, and therefore does not state a claim under section 1 of the Sherman Act. It charges only a termination of Walker's contract, which did not require that it handle Lucky's beer exclusively, for the reason that Lucky chose to demand that in the future Walker deal only in that beer. Much more than this was involved in the cases upon which appellants principally rely, Standard Oil Co. v. United States, 1949, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371, and United States v. Richfield Oil Corp., S.D.Cal., 1951, 99 F.Supp. 280, aff'd per curiam, 1952, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334. Those are Clayton Act, section 3 cases, not Sherman Act cases. In each, the oil company involved had in effect contracts or understandings with thousands of distributors which required, not only that they handle only the oil company's petroleum products, but also that they handle only those other automotive products that carried the company's approval and brand. No such system of contracts is here alleged. We also think that Carter Carburetor Corp. v. Federal Trade Commission, 8 Cir., 1940, 112 F.2d 722, also relied upon as supporting count three, is readily distinguishable. Here

there is no allegation that what Lucky did has in fact prevented any rival beer from gaining a foothold in the market involved.

### Neither Count States A Claim Under Section 2 Of The Sherman Act.

We do not think either count states a sufficient claim under section 2 of the Sherman Act, which makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * *." (As to monopoly and monopolizing generally, see Independent Iron Works, Inc. v. United States Steel Corp., 9 Cir., 1963, 322 F.2d 656; McElhenney Co. v. Western Auto Supply Co., supra)

Nowhere is there any allegation, direct or indirect, that the purpose or effect of the charged conspiracy is to monoplize, or that Lucky has monopolized or attempted to monopolize the beer market. For all that appears, there may be any number of other beers being sold in the market involved, however it may be defined, and by any number of distributors. Nothing whatever is said about Lucky's position in the market in question. It is not enough that Lucky be one of the largest manufacturers of beer in the west. That tells us nothing of its market position or power in the territory where the conspiracy is claimed to operate.

██ Certainly, not every illegal restraint of trade is a monopoly, or even a monopolizing or attempting to do so. A purpose to restrain competition is not necessarily a purpose to monopolize, although it may be. We think it not too much to require a party who seeks to recover under section 2 to allege at the least, either monopolizing, attempting to monopolize, or conspiring to monopolize. We do not insist upon the use of these magic words, although their use is not difficult. We do not say that the mere use of those words alone would be enough. But we do say that there must be allegations sufficient to show that the parties charged are doing one of those things.

We do not find such allegations here. Since appellants have admitted that they cannot allege more, the trial court was correct in holding that no claim for relief is stated under section 2 of the Sherman Act.

### Neither Count States A Claim Under Section 3 Of The Clayton Act.

We think that a claim is not stated in either count under section 3 of the Clayton Act, which makes it unlawful "to * * * make a sale or contract for sale of goods * * * on the condition, agreement, or understanding that the * * * purchaser thereof shall not * * * deal in the goods * * * of a competitor * * * where the effect of such * * * sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

There is simply no allegation in count two, even by fair implication, that such a sale or contract for sale was made by Lucky to or with Walker, although it should not be difficult to make such an allegation. We note again that appellants state that they cannot allege more than they have. The case under count two, as it relates to section 3 of the Clayton Act, closely resembles Leo J. Meyberg Co. v. Eureka Williams Corp., supra. See also McElhenney Co. v. Western Auto Supply Co., supra, at 337–339.

Count three is different. There it is alleged that the "disposition of [Walker's distribution of] * * * Coors was an oral condition imposed upon" Walker, and that "compliance with said oral condition was required before [Walker] was allowed to operate * * *." It is alleged that this occurred in 1958. Walker was terminated in 1960. By implication, at least, there must have been sales to Walker, upon the condition that Walker dispose of its distribution of Coors beer and handle only Lucky's beer, during the two year interval.

██ But what of the other requirement of the section, that the "effect of such * * * sale or contract for sale or

such condition * * * may be to substantially lessen competition or tend to create a monopoly in any line of commerce"? It is alleged that Lucky's *purpose* was to substantially reduce competition, but it is not alleged that the *effect* of Lucky's termination may be to substantially lessen competition, or that it may be to tend to create a monopoly. Purpose and effect are not necessarily the same. A conspiracy may be illegal under section 1 of the Sherman Act because of its purpose; under section 3 of the Clayton Act, an effect is required. And we again note that appellants say that they cannot allege more. The claim stated in count three is a far cry from Standard Oil Co. and Richfield Oil Corp., supra.

In short, count two, which charges a conspiracy, fails to charge the making of a sale or contract for sale of the type condemned by section 3 of the Clayton Act, while count three, which charges such a sale, fails to allege the necessary effect.

We therefore do not reach the question, not yet passed upon by the Supreme Court, whether a manufacturer, not conspiring with anyone, has the right to select dealers who will devote their time and energies to selling his products, or is compelled to retain dealers having divided loyalties adverse to his interests. (See White Motor Co. v. United States, supra; Ace Beer Distrib., Inc. v. Kohn, Inc., supra; Timken Roller Bearing Co. v. F.T.C., supra, at 842)

We conclude that count two does state a claim in favor of Walker under section 1 of the Sherman Act, by reason of the conspiracy allegations that it contains, but that neither count states a claim under section 2 of that act, or under section 3 of the Clayton Act.

■ Appellants T. G. and Rose Walker have no standing to maintain the counterclaim. Walker Distributing Company, Inc. was the distributor, and there are no allegations showing that the appealing individuals were in any way affected by Lucky's conduct save in their capacity as Walker Distributing's stockholders. This is not enough. (See Fleitman v. Welsbach St. Lighting Co., 1916, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505; Martens v. Barrett, 5 Cir., 1957, 245 F.2d 844; Peter v. Western Newspaper Union, 5 Cir., 1953, 200 F.2d 867; Loeb v. Eastman Kodak Co., 3 Cir., 1910, 183 F. 704; cf. United Copper Sec. Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 33 S.Ct. 509, 61 L.Ed. 1119.)

The judgment against appellants T. G. Walker and Rose Walker is affirmed; the judgment against Walker Distributing Company, Inc., is affirmed, as to count three, and is reversed, as to count two, and the matter is remanded for further proceedings consistent with this opinion.

HAMLIN, Circuit Judge (concurring in part and dissenting in part).

I concur in the opinion of the court insofar as it affirms the judgment against appellants T. G. Walker and Rose Walker, and insofar as it affirms the judgment against Walker Distributing Company as to Count Three of the complaint in question.

I respectfully dissent, however, to that portion of the opinion in which the judgment of the district court as to Count Two of said complaint is reversed. I would hold that the allegations of Count Two are insufficient to properly allege a conspiracy in restraint of trade in violation of section 1 of the Sherman Act.

I agree with the statement found in Nelson Radio & Supply Co. v. Motorola[1] that a "general allegation of conspiracy, without a statement of the facts constituting the conspiracy to restrain trade, its object and accomplishment, is but an allegation of a legal conclusion, which is insufficient to constitute a cause of action. [Citations]"

In my opinion there are not sufficient factual allegations to permit Count Two to withstand attack.

I would affirm the entire judgment.

1. 200 F.2d 911, 913 (5th Cir., 1952), cert. den., 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356.